Eddie A. Pantiliat (State Bar No. 015231)
**HYMSON GOLDSTEIN & PANTILIAT, PLLC**
16427 N. Scottsdale Road, Suite 300
Scottsdale, Arizona 85254
Telephone: 480- 991-9077
minute@legalcounselors.com

*Attorneys for Two Fingers, LLC dba Stone and Vine Urban Italian Restaurant, Four Fingers, LLC dba Salt & Lime Modern Mexican Grill, Six Fingers, LLC dba Black & Bleu Restaurant, and Joseph M. Popo and Gabriella Popo*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| AMY PATTERSON,<br><br>    Plaintiff,<br><br>  v.<br><br>TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO,<br><br>    Defendants. | Case No. 2:15-cv-00494-NVW<br><br>**DEFENDANTS TWO FINGERS, LLC'S, FOUR FINGERS, LLC'S, SIX FINGERS, LLC'S AND JOSEPH M. POPO AND GABRIELLA POPO'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT**<br><br>[Assigned to The Hon. Neil V. Wake] |
| TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO,<br><br>    Counterclaimants,<br><br>  v.<br><br>AMY PATTERSON,<br><br>    Counter defendant. |  |

TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO,

Third-Party Plaintiffs,

PETER K. STROJNIK; THE STROJNIK FIRM L.L.C. an Arizona limited liability company; and Doex I – XX,

Third-Party Defendants.

Defendants/Counterclaimants/Third-Party Plaintiffs  Joseph M. Popo and Gabriella Popo, Two Fingers, LLC, d/b/a Stone & Vine, Four Fingers, LLC, d/b/a Salt & Lime Modern Mexican Grill, and Six Fingers, LLC d/b/a Black & Bleu  (collectively "Plaintiffs"), through undersigned counsel hereby respectfully submit their Counter Complaint and Third-Party Complaint against Counter Defendant and Third-Party Defendants as follows:

## COUNTERCLAIM AND THIRD PARTY CLAIM

## JURISDICTION

1.      Defendants/Counterclaimants/Third-Party Plaintiffs Joseph M. Popo ("Popo") resides in the County of Maricopa, State of Arizona.

2.      Defendants/Counterclaimants/Third-Party Plaintiffs Two Fingers, LLC, d/b/a Stone & Vine ("Stone & Vine") is an Arizona Limited Liability Company authorized to do business and was doing business within the County of Maricopa, State of Arizona.

3.      Defendants/Counterclaimants/Third-Party Plaintiffs Four Fingers, LLC, d/b/a Salt & Lime Modern Mexican Grill ("Salt & Lime") is an Arizona Limited Liability Company authorized to do business and was doing business within the County of Maricopa, State of Arizona.

/ / /

/ / /

4.      Defendants/Counterclaimants/Third-Party Plaintiffs Six Fingers, LLC d/b/a Black & Bleu ("Black & Bleu") is an Arizona Limited Liability Company authorized to do business and was doing business within the County of Maricopa, State of Arizona.

5.      Third-Party Defendant Peter Strojnik ("Strojnik") is an attorney licensed to practice law in the State of Arizona and at all relevant times hereto was a resident of the County of Maricopa, State of Arizona.

6.      Third-Party Defendant Strojnik Law Firm, LLC ("Strojnik Firm") is an Arizona Limited Liability Company authorized to do business and was doing business within the County of Maricopa, State of Arizona.

7.      Counter-Defendant Amy Patterson ("Patterson") is an unmarried woman who at all times relevant hereto was a resident of the State of Arizona, Maricopa County.

8.      Pursuant to Rule 10(f), Ariz.R.Civ.P., Third-Party Defendants Does I-X are presently unknown persons, partnerships, associations, corporations, and/or limited liability companies whose true names, identities and status are presently unknown to Third-Party Plaintiffs and, therefore, Third-Party Plaintiffs sues said Third-Party Defendants by such fictitious names. Third-Party Plaintiffs allege that these fictitiously named defendants participated in the acts alleged herein or are otherwise liable therefore. When the true names and capacities of said Third-Party Defendants are ascertained, Third-Party Plaintiffs will accordingly amend this Complaint as a matter of right or, if required, through leave of Court.

9.      All transactions, occurrences and events relevant to this action occurred or originated in Maricopa County, Arizona. Venue is proper in this Court pursuant to A.R.S. §12-401.

## GENERAL ALLEGATIONS

10.     On or about January of 2001, Popo developed a restaurant concept focusing upon a unique dining experience and the highest standards of quality and service etiquette.

11.     From 2001 through 2011, the numerous restaurants managed and/or operated by Popo increased market share and developed loyal patronage due to Popo's reputation as a superior restaurateur and growing sentiment in the Arizona culinary community.

12.    In 2011, Popo initiated development of a new brand focusing upon modern Italian fare known as Stone and Vine. From 2011 to 2015, Stone and Vine continued to grow its customer base and expanded its geographical footprint through the opening of a secondary location, in Chandler, Arizona.

13.    In 2013, Due to the successful launch of Stone and Vine, Popo began development of a separate brand providing customers a relaxing environment accompanied by trendy Mexican cuisine and the same level of quality and service Popo's clientele have grown accustomed. In 2014, Salt & Lime opened its doors and has experienced steadily increased sales while attempting to establish itself in the Scottsdale marketplace.

14.    In September of 2014, Popo sought to create an additional companion restaurant highlighting the quality of a luxury steakhouse in a more casual modernistic environment, commonly known as Black & Bleu.

15.    Counter-Defendant Patterson was employed as a server, and later manager, by Stone and Vine in 2011, however, Patterson provided services at Salt & Lime and Black & Bleu for a limited time to assist both companies during the launching process.

16.    During Patterson's employment, Patterson routinely discussed her sexual proclivities in a candid and unabashed manner, which included on a number of occasions, sexual relationships with her co-workers and texting of nude photos of herself.

17.    During Patterson's employment, she instigated and actively participated in banter, making explicit sexual references to Popo, such that no reasonable person could perceive Popo's comments in response as harassing or unwelcome.

18.    Defendants/Counterclaimants/Third-Party Plaintiffs, nor any of its managers, officers, directors or agents, ever engaged in any harassment, discrimination or retaliation against Plaintiff, and the environment in which Plaintiff worked was not hostile or offensive as an objective matter and was not considered hostile or offensive by Plaintiff as a subjective matter.

19.    Plaintiff failed to reasonably make use of Defendants/Counterclaimants/Third-Party Plaintiffs' anti-harassment, anti-discrimination and anti-retaliation policies and

procedures, as well as the grievance options, mediation options, arbitration options, and other policies and procedures.

20.    Plaintiff failed to complain and/or failed to complain promptly about any alleged retaliation or discrimination.

21.    At no point during Patterson's employment did Patterson advise Defendants/Counterclaimants/Third-Party Plaintiffs that she was subject to any statements she deemed harassing or hostile.

22.    During the course of Patterson's employment, she routinely voiced her satisfaction with her treatment and role in the company, which included affirmatively inquiring as to the potential of transitioning from a part-time employee to a full-time managerial position.

23.    In December of 2014, Patterson, while working at Black & Bleu, was the subject of a complaint posted on Yelp, adversely affecting the image and potential success of the recently opened restaurant. *See Yelp review*, attached hereto as Exhibit "A."

24.    The circumstances surrounding the critical Yelp complaint were discussed directly with Patterson, ultimately leading to her resignation.

25.    Patterson provided Defendants/Counterclaimants/Third-Party Plaintiffs two-weeks notice in conjunction with her resignation, but due to her access to proprietary and financial information, her resignation was accepted effective immediately.

26.    Upon notification that her resignation was accepted effective immediately, Patterson inquired as to whether she would nevertheless be paid for an additional two-weeks beyond the termination of her employment. Upon receiving no response from Defendants, Patterson posted on her website "I love being underestimated." *See Screenshot*, attached hereto as Exhibit "B."

/ / /

27.    At not point during discussions with Defendants/Counterclaimants/Third-Party Plaintiffs regarding the termination of her employment, did Patterson advise that the reason for her resignation was the result of a hostile work environment or alleged sexual harassment.

28.    Patterson, Strojnik and Strojnik Firm conspired with one another to extort money from Popo by threatening the disclosure of work related communications, potential criminal activity, and alleged affairs to the public at large.

29.    Patterson, Strojnik and Strojnik firm embarked on a deliberate and malicious campaign to defame Defendants/Counterclaimants/Third-Party Plaintiffs and to injure their businesses, reputations and personal lives.

30.    Patterson, Strojnik and Strojnik Firm, unethically, unlawfully and/or tortiously threatened Defendants/Counterclaimants/Third-Party Plaintiffs with the disclosure of alleged criminal activity unless Defendants/Counterclaimants/Third-Party Plaintiffs paid Patterson, Strojnik and Strojnik Firm.

31.    On January 12, 2015, to facilitate the extortion of money from Defendants/Counterclaimants/Third-Party Plaintiffs, Patterson, Strojnik and Strojnik Firm threatened an increasing scheme of publicity, inclusive of postings on numerous websites, picketing, disclosure of alleged affairs, pamphlets, reporting to governmental agencies, disclosure to news agencies, and reporting of alleged criminal activity to the Phoenix Police Department, Department of Homeland Security and Federal Bureau of Investigations. *See correspondence dated January 12, 2015*, attached hereto as Exhibit "C."

32.    On January 12, 2015, Patterson Strojnik and Strojnik Firm demanded payment in the amount of $500,000 to avoid initiation of the threatened conduct referenced in subparagraph 32, including an agreement not to seek criminal charges against Defendants/Counterclaimants/Third-Party Plaintiffs. *See correspondence dated January 12, 2015*, attached hereto as Exhibit "C."

33.    Pursuant to A.R.S. § 13-1804(a), a person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to do in the

1  future any of the following: (5) accuse anyone of a crime or bringing criminal charges against
2  anyone.

3      34.    Upon information and belief, Strojnik's and Strojnik Firm's conduct in this
4  matter violate Arizona Ethics Rules 3.6 ("a lawyer who is participating or has participated in
5  the investigation or litigation of a matter shall not make an extrajudicial statement that the
6  lawyer knows or reasonably should know will be disseminated by means of public
7  communication and will have a substantial likelihood of materially prejudicing an adjudicative
8  proceeding in the matter), 4.4 (a) (a lawyer shall not use means that have no substantial
9  purpose other than to embarrass, delay or burden any other person), 8.4(c) (prohibition against
10 a lawyer engaging in conduct that is prejudicial to the administration of justice), 8.4(b)
11 (prohibition against a lawyer committing a criminal act that reflects adversely on the lawyer's
12 honesty, trustworthiness or fitness as a lawyer in other respects).

13     35.    In an attempt to demonstrate that Patterson, Strojnik and Strojnik Firm were
14 serious in their threats to bring criminal charges, Patterson, Strojnik and Strojnik Firm
15 disseminated defamatory and libelous information to the public by posting on websites such as
16 LinkedIn, Facebook and The Dirty Scottsdale, which are accessible to anyone in the public at
17 large. *See Screenshots from Facebook and The Dirty Scottsdale*, attached hereto as Exhibit
18 "D." The postings on Defendants'/Counterclaimants'/Third-Party Plaintiffs' Facebook page
19 forced Defendants/Counterclaimants/Third-Party Plaintiffs to disable their Facebook account
20 to avoid continued harassment.

21     36.    Strojnik and Strojnik Firm knew their defamatory and libelous statements on
22 The Dirty Scottsdale would be viewed by the public at large and injure
23 Defendants/Counterclaimants/Third-Party Plaintiffs, stating "this website seems to be an
24 effective tool when used appropriately, which is why I post here." *See Screenshots from The*
25 *Dirty Scottsdale*, attached hereto as Exhibit "E."

26     37.    In an further attempt to extort money, Patterson, Strojnik and Strojnik Firm
27 created a website designed solely to disseminate information to the public, disparage
28 Defendants/Counterclaimants/Third-Party Plaintiffs (and their attorney), and extort

Defendants/Counterclaimants/Third-Party Plaintiffs into paying money to avoid further publicity and/or the reporting of alleged criminal activity. *See Screenshots from www.stoneandvinesexallegations.com*, attached hereto as Exhibit "F."

38. Via the website www.stoneandvinesexallegations.com and correspondence with counsel, Patterson, Strojnik and Strojnik Firm made clear that their motives were to "destroy these restaurants," "ensure he [Popo] is punished beyond all comprehension," and "ensure that Mr. Popo and his restaurants are punished mercilessly in a court of law." *See Screenshots from www.stoneandvinesexallegations.com*, attached hereto as Exhibit "E"; and Email correspondence with counsel, attached hereto as Exhibit "G."

39. Patterson, Strojnik, Strojnik Firm and/or their paid representatives visited Defendants/Counterclaimants/Third-Party Plaintiffs' places of business on numerous occasions to protest, disseminate pamphlets and/or otherwise bully Defendants/Counterclaimants/Third-Party Plaintiffs into capitulating to their unlawful demands. *See Pamphlet*, attached hereto as Exhibit "H"; and *email from Strojnik*, attached hereto as Exhibit "I."

40. Patterson, Strojnik and Strojnik Firm further attempted to extort, coerce and/or bully Defendants/Counterclaimants/Third-Party Plaintiffs by interfering with the contractual relationship between Defendants/Counterclaimants/Third-Party Plaintiffs' and their Property Managers, stating "our beef is with SV and this sick man Popo not your client," "I don't really see any negative impact to 9400 considering that's some prime real estate that can be re-filled with another lessee quite quickly," and "I am very sure 9400 would be much more concerned about leasing to a company that is alleged to be violating federal immigration laws verse some little 'ole fliers, and that your client certainly does not wish to aid or abet such activity." *See email from Strojnik*, attached hereto as Exhibit "I."

41. 94 Hundred Shea, LLLP ("94 Hundred Shea"), the owner of the property where Defendants'/Counterclaimants'/Third-Party Plaintiffs' principle places of business are located, issued a Cease and Desist letter to Strojnik arising out of the targeted campaign, advising that continued conduct would be considered trespassing and deemed tortious interference with the

1  contractual relationships 94 Hundred Shea maintained with its tenants. *See Cease and Desist*

2  *Letter*, attached hereto as Exhibit "J."

3      42.     On January 30, 2015, Defendants/Counterclaimants/Third-Party Plaintiffs sent

4  correspondence to Patterson, Strojnik and Strojnik Firm advising of their position relative to

5  the alleged charges. *See January 30, 2015 correspondence*, attached hereto as Exhibit "K."

6      43.     On February 1, 2015, in direct response to Defendants/Counterclaimants/Third-

7  Party Plaintiffs' correspondence advising that they would not fall prey to their extortionist

8  tactics, Patterson, Strojnik and Strojnik Firm increased their demand and threatened to escalate

9  hostilities, stating:

10     "as we speak, my creative is working on the artwork for the standard-sized
       "Shame On" banner that will be placed in a public area in front of Stone and
11     Vine once this week during happy hour times. The next week, it will be placed
       there two days. The following week, three days. And so on. And when it
12     becomes every day, I will ask my creative to print a new banner for Salt &
       Lime. And so on, and so on. You will be surprised at how inexpensive this is
13     and how experienced I am at this." *See Correspondence dated February 1,
       2015*, attached hereto as Exhibit "L."

14
       44.     Defendants/Counterclaimants/Third-Party Plaintiffs requested that Patterson,
15
   Strojnik and Strojnik Firm cease and desist, but Patterson, Strojnik and Strojnik Firm have
16
   failed to do so.
17
       45.     Patterson's, Strojnik's and Strojnik Firm's statements referenced above are false,
18
   in that they may be conclusively established with evidence to be untrue.
19
       46.     Patterson's, Strojnik's and Strojnik Firm's statements are false in that they cite
20
   cherry-picked statements that are taken out of context and include statements from unproven
21
   and untrue allegations of unverified complaints against Defendants that are presented out of
22
   context and combined with false statements and innuendos of Patterson's, Strojnik's and
23
   Strojnik Firm's own fabrication that, when considered as a whole, result in false statements
24
   being conveyed to the readers by implying meanings that are untrue. Patterson, Strojnik and
25
   Strojnik Firm purposefully misconstrued and manipulated information to convey the most
26
   damaging possible image of Defendants.
27
   / / /
28

**COUNT ONE**
**(INJURIOUS FALSEHOOD – BUSINESS DISPARAGEMENT AGAINST**
**COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS**
**STROJNIK**
**AND STROJNIK FIRM)**

47.     Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

48.     Patterson, Strojnik, and Strojnik Firm published or caused to be published false, derogatory statements to third parties relating to Defendants/Counterclaimants/Third-Party Plaintiffs' business and professional abilities.

49.     Such statements may reasonably be interpreted as concerning Defendants/Counterclaimants/Third-Party Plaintiffs and leave no doubt that the statements were intended to harm the reputation and image of Defendants/Counterclaimants/Third-Party Plaintiffs by alleging criminal activity, and make statements intending to "destroy these restaurants."  Such statements were calculated to prevent others from dealing with Defendants/Counterclaimants/Third-Party Plaintiffs, disparage their reputations, cause clients to shun the businesses, adversely impact relationships with landlords and/or property managers, and/or otherwise expose those involved to ridicule and/or contempt.

50.     Patterson, Strojnik and Strojnik Firm further attempted to extort, coerce and/or bully Defendants/Counterclaimants/Third-Party Plaintiffs by interfering with the contractual relationship between Defendants/Counterclaimants/Third-Party Plaintiffs' and their Property Managers, stating "our beef is with SV and this sick man Popo not your client," "I don't really see any negative impact to 9400 considering that's some prime real estate that can be re-filled with another lessee quite quickly," and "I am very sure 9400 would be much more concerned about leasing to a company that is alleged to be violating federal immigration laws verse some little 'ole fliers, and that your client certainly does not wish to aid or abet such activity." *See email from Strojnik*, attached hereto as Exhibit "I."

51.     94 Hundred Shea, LLLP ("94 Hundred Shea"), the owner of the property where Defendants'/Counterclaimants'/Third-Party Plaintiffs' principle places of business are located,

1  issued a Cease and Desist letter to Strojnik arising out of the targeted campaign, advising that

2  continued conduct would be considered trespassing and deemed tortious interference with the

3  contractual relationships 94 Hundred Shea maintained with its tenants. *See Cease and Desist*

4  *Letter*, attached hereto as Exhibit "J."

5      52.    Such statements included, but are not limited to, statements made by Patterson,

6  Strojnik, and Strojnik Firm on various websites, via pamphlet, and picketers.

7      53.    The statements authored by Patterson, Strojnik, and Strojnik Firm were

8  reasonably understood by those who heard them to cast doubt on the quality of

9  Defendants/Counterclaimants/Third-Party Plaintiffs' services and have adversely impacted

10 Defendants'/Counterclaimants'/Third-Party Plaintiffs' relationship with their landlord.

11     54.    Such statements are demonstrably false in that they include untrue statements,

12 purposefully include unverified complaints, presented facts out of context and included false

13 innuendos, when considered as a whole, conveyed false meanings to the readers or implied

14 meanings that are untrue.

15     55.    At the time such statements were published, Patterson, Strojnik, and Strojnik

16 Firm knew the statements were false, or recklessly disregarded for their falsity, and acted with

17 actual malice "to destroy these restaurants," "ensure he is punished beyond all comprehension"

18 and "ensure that Mr. Popo and his restaurants are punished mercilessly in a court of law."

19 Patterson, Strojnik, and Strojnik Firm have admitted that they acted with actual malice by

20 identifying their intent in disseminating was to harm and injure the reputations of

21 Defendants/Counterclaimants/Third-Party Plaintiffs in the eye of the consumers and landlord,

22 with the fabricated pretense of providing a public service by informing the general public.

23     56.    Patterson's, Strojnik's, and Strojnik Firm's publication of false and defamatory

24 statements    did,    in    fact,    directly    and    proximately    result    in    harm    to

25 Defendants/Counterclaimants/Third-Party Plaintiffs' business, trade, profession, occupation,

26 resulting in severe emotional distress, contracts, reputation impairment, impairment of

27 community standing or future standing, humiliation, inconvenience, loss of income and

28 damage to Defendants/Counterclaimants/Third-Party Plaintiffs' ongoing business concerns.

57.    As a direct and proximate consequence of such libel alleged herein, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damages in an amount to be established at trial.

58.    The aforementioned statements were disseminated wilfully and intentionally with malice, entitling Defendants/Counterclaimants/Third-Party Plaintiffs to exemplary and/or punitive damages in an amount to be established at trial to dissuade Patterson, Strojnik, and Strojnik Firm and/or otherwise deter such conduct in the future. Punitive damages are further appropriate due to Strojnik's, and Strojnik Firm's violation of the ethical rules of conduct and pattern of oppressive and harassing conduct. See Arizona Ethical Rules 3.6, 4.4 (a), 8.4(c), and 8.4(b)

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.    For compensatory damages in an amount according to proof at trial;

B.    For punitive damages in an amount according to proof at trial;

C.    For the issuance of a permanent injunction enjoining Patterson, Strojnik, and Strojnik Firm from republishing any of their false and defamatory statements about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the internet, via hand-delivery, electronically, and/or in print;

D.    For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

E.    For such other and further relief as the Court deems just and proper.

## COUNT TWO
### (WRONGFUL INTERFERENCE WITH BUSINESS RELATIONSHIPS AGAINST COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS STROJNIK AND STROJNIK FIRM)

59.    Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

60.    Defendants/Counterclaimants/Third-Party Plaintiffs had prospective and actual contracts with vendors, regular business expectancy interests and potential business expectancy interests.

61.    Defendants/Counterclaimants/Third-Party Plaintiffs knew about the existence of these contractual relationships and business expectancy interests, as demonstrated by the statements made by Patterson, Strojnik, and Strojnik Firm to adversely impact such contracts and business expectancy interests by "destroy[ing] these restaurants."

62.    Patterson's, Strojnik's, and Strojnik Firm's conduct was improper.

63.    Such statements may reasonably be interpreted as concerning Defendants/Counterclaimants/Third-Party Plaintiffs and leave no doubt that the statements were intended to harm the reputation and image of Defendants/Counterclaimants/Third-Party Plaintiffs by alleging criminal activity, and make statements intending to "destroy these restaurants."  Such statements were calculated to prevent others from dealing with Defendants/Counterclaimants/Third-Party Plaintiffs, disparage their reputations, cause clients to shun the businesses, adversely impact relationships with landlords and/or property managers, and/or otherwise expose those involved to ridicule and/or contempt.

64.    Patterson, Strojnik and Strojnik Firm further attempted to extort, coerce and/or bully Defendants/Counterclaimants/Third-Party Plaintiffs by interfering with the contractual relationship between Defendants/Counterclaimants/Third-Party Plaintiffs' and their Property Managers, stating "our beef is with SV and this sick man Popo not your client," "I don't really see any negative impact to 9400 considering that's some prime real estate that can be re-filled with another lessee quite quickly," and "I am very sure 9400 would be much more concerned about leasing to a company that is alleged to be violating federal immigration laws verse some little 'ole fliers, and that your client certainly does not wish to aid or abet such activity." *See email from Strojnik*, attached hereto as Exhibit "I."

65.    94 Hundred Shea, LLLP ("94 Hundred Shea"), the owner of the property where Defendants'/Counterclaimants'/Third-Party Plaintiffs' principle places of business are located, issued a Cease and Desist letter to Strojnik arising out of the targeted campaign, advising that

1  continued conduct would be considered trespassing and deemed tortious interference with the

2  contractual relationships 94 Hundred Shea maintained with its tenants. *See Cease and Desist*

3  *Letter*, attached hereto as Exhibit "J."

4      66.    The statements authored by Patterson, Strojnik, and Strojnik Firm were

5  reasonably understood by those who heard the to cast doubt on the quality of

6  Defendants/Counterclaimants/Third-Party Plaintiffs' services, injure relationships with their

7  landlords and property managers, interfering and/or inducing others to breach their

8  relationship or expectancy interest.

9      67.    Such statements are demonstrably false in that they include untrue statements,

10  purposefully include unverified complaints, presented facts out of context and included false

11  innuendos, when considered as a whole, conveyed false meanings to the readers or implied

12  meanings that are untrue.

13      68.    Patterson's, Strojnik's, and Strojnik Firm's publication of false and defamatory

14  statements    did,    in    fact,    directly    and    proximately    result    in    harm    to

15  Defendants/Counterclaimants/Third-Party Plaintiffs' business, contracts, trade, profession,

16  occupation, resulting in severe emotional distress, reputation impairment, impairment of

17  community standing or future standing, humiliation, inconvenience, potential loss of business

18  locations, loss of income and damage to Defendants/Counterclaimants/Third-Party Plaintiffs'

19  ongoing business concerns.

20      69.    As a direct and proximate consequence of such statements alleged herein,

21  Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and

22  consequentially damages in an amount to be established at trial.

23      70.    The aforementioned statements were disseminated wilfully and intentionally

24  with malice, entitling Defendants/Counterclaimants/Third-Party Plaintiffs to exemplary and/or

25  punitive damages in an amount to be established at trial to dissuade Patterson, Strojnik, and

26  Strojnik Firm and/or otherwise deter such conduct in the future. Punitive damages are further

27  appropriate due to Strojnik's, and Strojnik Firm's violation of the ethical rules of conduct and

28

1  pattern of oppressive and harassing conduct.  See Arizona Ethical Rules 3.6, 4.4 (a), 8.4(c),
2  and 8.4(b)

3       WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that
4  judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

5       A.    For compensatory damages in an amount according to proof at trial;

6       B.    For punitive damages in an amount according to proof at trial;

7       C.    For the issuance of a permanent injunction enjoining Patterson, Strojnik, and
8             Strojnik Firm from republishing any of their false and defamatory statements
9             about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the
10            internet, via hand-delivery, electronically, and/or in print;

11      D.    For cost of suit incurred herein, including but not limited to, attorneys' fees,
12            costs and expert witness fees; and

13      E.    For such other and further relief as the Court deems just and proper.

## COUNT THREE
## (DEFAMATION (LIBEL PER SE) AGAINST COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS STROJNIK AND STROJNIK FIRM)

17      71.   Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above
18  allegations as if set forth in full.

19      72.   The statements alleged hereinabove were published within one-year to the public
20  at large, and anyone in the public at large using the internet and/or receiving the pamphlets
21  were/are able to discover them.

22      73.   Such statements may reasonably be interpreted as concerning
23  Defendants/Counterclaimants/Third-Party Plaintiffs and leave no doubt that the statements
24  were intended to harm the reputation and image of Defendants/Counterclaimants/Third-Party
25  Plaintiffs by alleging criminal activity, and make statements intending to "destroy these
26  restaurants," "ensure he is punished beyond all comprehension" and "ensure that Mr. Popo and
27  his restaurants are punished mercilessly in a court of law."

28

74.    Such statements tend to affect Defendants/Counterclaimants/Third-Party Plaintiffs' reputation, causing clients to shun the businesses, adversely impact relationships with landlords and/or property managers, expose those involved to ridicule and/or contempt.

75.    Such statements are demonstrably false in that they include untrue statements, purposefully include unverified complaints, presented facts out of context and included false innuendos, when considered as a whole, conveyed false meanings to the readers or implied meanings that are untrue.

76.    At the time such statements were published, Patterson, Strojnik, and Strojnik Firm knew the statements were false, or recklessly disregarded for their falsity, and acted with actual malice "to destroy these restaurants," "ensure he is punished beyond all comprehension" and "ensure that Mr. Popo and his restaurants are punished mercilessly in a court of law." Patterson, Strojnik, and Strojnik Firm have admitted that they acted with actual malice by identifying their intent in disseminating was to harm and injure the reputations of Defendants/Counterclaimants/Third-Party Plaintiffs in the eye of the consumers, with the fabricated pretense of providing a public service by informing the general public.

77.    Patterson's, Strojnik's, and Strojnik Firm's publication of false and defamatory statements did, in fact, directly and proximately result in harm to Defendants/Counterclaimants/Third-Party Plaintiffs' business, trade, contracts, profession, occupation, resulting in severe emotional distress, reputation impairment, impairment of community standing or future standing, humiliation, inconvenience, loss of income and damage to Defendants/Counterclaimants/Third-Party Plaintiffs' ongoing business concerns.

78.    Such statements bring Defendants/Counterclaimants/Third-Party Plaintiffs into disrepute, contempt, ridicule, and/or impeach Defendants/Counterclaimants/Third-Party Plaintiffs' honesty, integrity, virtue and reputation.

79.    Patterson, Strojnik and Strojnik Firm further attempted to extort, coerce and/or bully Defendants/Counterclaimants/Third-Party Plaintiffs by interfering with the contractual relationship between Defendants/Counterclaimants/Third-Party Plaintiffs' and their Property Managers, stating "our beef is with SV and this sick man Popo not your client," "I don't really

see any negative impact to 9400 considering that's some prime real estate that can be re-filled with another lessee quite quickly," and "I am very sure 9400 would be much more concerned about leasing to a company that is alleged to be violating federal immigration laws verse some little 'ole fliers, and that your client certainly does not wish to aid or abet such activity." *See email from Strojnik*, attached hereto as Exhibit "I."

80.    94 Hundred Shea, LLLP ("94 Hundred Shea"), the owner of the property where Defendants'/Counterclaimants'/Third-Party Plaintiffs' principle places of business are located, issued a Cease and Desist letter to Strojnik arising out of the targeted campaign, advising that continued conduct would be considered trespassing and deemed tortious interference with the contractual relationships 94 Hundred Shea maintained with its tenants. *See Cease and Desist Letter*, attached hereto as Exhibit "J."

81.    As a direct and proximate consequence of such libel per se alleged herein, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damages in an amount to be established at trial.

82.    The aforementioned libel per se was committed wilfully and intentionally with malice, entitling Defendants/Counterclaimants/Third-Party Plaintiffs to exemplary and/or punitive damages in an amount to be established at trial to dissuade Patterson, Strojnik, and Strojnik Firm and/or otherwise deter such conduct in the future.  Punitive damages are further appropriate due to Strojnik's, and Strojnik Firm's violation of the ethical rules of conduct and pattern of oppressive and harassing conduct. See Arizona Ethical Rules 3.6, 4.4 (a), 8.4(c), and 8.4(b)

83.    Patterson's, Strojnik's, and Strojnik Firm's libel per se, unless enjoined by a preliminary injunction and a permanent injunction judgment of this Court, will continue to cause great and irreparable injury to Defendants/Counterclaimants/Third-Party Plaintiffs.  No adequate remedy at law exist for the injuries that are currently being suffered and are threated to be suffered by Patterson, Strojnik, and Strojnik Firm.

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.   For compensatory damages in an amount according to proof at trial;

B.   For punitive damages in an amount according to proof at trial;

C.   For the issuance of a permanent injunction enjoining Patterson, Strojnik, and Strojnik Firm from republishing any of their false and defamatory statements about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the internet, via hand-delivery, electronically, and/or in print;

D.   For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

E.   For such other and further relief as the Court deems just and proper.

## COUNT FOUR
## (DEFAMATION (TRADE LIBEL) AGAINST COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS STROJNIK AND STROJNIK FIRM)

84.   Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

85.   Defendants/Counterclaimants/Third-Party Plaintiffs' integrity, competence and quality of service are legally protectable interests that are subject to trade libel.

86.   Such statements may reasonably be interpreted as concerning Defendants/Counterclaimants/Third-Party Plaintiffs and leave no doubt that the statements were intended to harm the reputation and image of Defendants/Counterclaimants/Third-Party Plaintiffs by alleging criminal activity, and make statements intending to "destroy these restaurants."   Such statements were calculated to prevent others from dealing with Defendants/Counterclaimants/Third-Party Plaintiffs, disparage their reputations, cause clients to shun the businesses, and/or otherwise expose those involved to ridicule and/or contempt.

87.   Within one-year of the filing of the herein action, Patterson, Strojnik, and Strojnik Firm disparaged Defendants/Counterclaimants/Third-Party Plaintiffs through public statements intending to disparage Defendants/Counterclaimants/Third-Party Plaintiffs' integrity, contractual relationships, competence and quality of service.

88.     Such statements are demonstrably false in that they include untrue statements, purposefully include unverified complaints, presented facts out of context and included false innuendos, when considered as a whole, conveyed false meanings to the readers or implied meanings that are untrue.

89.     At the time such statements were published, Patterson, Strojnik, and Strojnik Firm knew the statements were false, or recklessly disregarded for their falsity, and acted with actual malice "to destroy these restaurants," ensure he is punished beyond all comprehension" and "ensure that Mr. Popo and his restaurants are punished mercilessly in a court of law." Patterson, Strojnik, and Strojnik Firm have admitted that they acted with actual malice by identifying their intent in disseminating was to harm and injure the reputations of Defendants/Counterclaimants/Third-Party Plaintiffs in the eye of the consumers, with the fabricated pretense of providing a public service by informing the general public.

90.     Patterson, Strojnik and Strojnik Firm further attempted to extort, coerce and/or bully Defendants/Counterclaimants/Third-Party Plaintiffs by interfering with the contractual relationship between Defendants/Counterclaimants/Third-Party Plaintiffs' and their Property Managers, stating "our beef is with SV and this sick man Popo not your client," "I don't really see any negative impact to 9400 considering that's some prime real estate that can be re-filled with another lessee quite quickly," and "I am very sure 9400 would be much more concerned about leasing to a company that is alleged to be violating federal immigration laws verse some little 'ole fliers, and that your client certainly does not wish to aid or abet such activity." *See email from Strojnik*, attached hereto as Exhibit "I."

91.     94 Hundred Shea, LLLP ("94 Hundred Shea"), the owner of the property where Defendants'/Counterclaimants'/Third-Party Plaintiffs' principle places of business are located, issued a Cease and Desist letter to Strojnik arising out of the targeted campaign, advising that continued conduct would be considered trespassing and deemed tortious interference with the contractual relationships 94 Hundred Shea maintained with its tenants. *See Cease and Desist Letter*, attached hereto as Exhibit "J."

92.     Patterson's, Strojnik's, and Strojnik Firm's publication of false and defamatory statements did, in fact, directly and proximately result in harm to Defendants/Counterclaimants/Third-Party Plaintiffs' business, trade, profession, occupation, resulting in severe emotional distress, reputation impairment, impairment of community standing or future standing, humiliation, inconvenience, loss of income, adversely impact relationships with landlords and/or property managers, and damage to Defendants/Counterclaimants/Third-Party Plaintiffs' ongoing business concerns.

93.     As a direct and proximate consequence of such libel alleged herein, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damages in an amount to be established at trial.

94.     The aforementioned libel was committed wilfully and intentionally with malice, entitling Defendants/Counterclaimants/Third-Party Plaintiffs to exemplary and/or punitive damages in an amount to be established at trial to dissuade Patterson, Strojnik, and Strojnik Firm and/or otherwise deter such conduct in the future.  Punitive damages are further appropriate due to Strojnik's, and Strojnik Firm's violation of the ethical rules of conduct and pattern of oppressive and harassing conduct.  See Arizona Ethical Rules 3.6, 4.4 (a), 8.4(c), and 8.4(b)

95.     Patterson's, Strojnik's, and Strojnik Firm's libel, unless enjoined by a preliminary injunction and a permanent injunction judgment of this Court, will continue to cause great and irreparable injury to Defendants/Counterclaimants/Third-Party Plaintiffs. No adequate remedy at law exist for the injuries that are currently being suffered and are threated to be suffered by Patterson, Strojnik, and Strojnik Firm.

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.      For compensatory damages in an amount according to proof at trial;

B.      For punitive damages in an amount according to proof at trial;

C.      For the issuance of a permanent injunction enjoining Patterson, Strojnik, and Strojnik Firm from republishing any of their false and defamatory statements

1    about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the

2    internet, via hand-delivery, electronically, and/or in print;

3    D.    For cost of suit incurred herein, including but not limited to, attorneys' fees,

4    costs and expert witness fees; and

5    E.    For such other and further relief as the Court deems just and proper.

**COUNT FIVE**
**(INVASION OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)**
**AGAINST COUNTER-DEFENDANT PATTERSON & THIRD-PARTY**
**DEFENDANTS STROJNIK AND STROJNIK FIRM)**

96.    Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

97.    As alleged herein, Patterson, Strojnik, and Strojnik Firm disseminated numerous statements on the internet, via pamphlet and through the use of picketers within one year of the filing of this action.

98.    Patterson, Strojnik, and Strojnik Firm gave publicity to such statements through the public disclosure such that anyone in the public at large will be able to discover them.

99.    Such statements were private matters, inclusive of intimate details of Popo's private life that are not generally known, which are provided the highest privacy interests. Such private matters have not been publicly disclosed and/or are demonstrably false in that they include untrue statements, purposefully include unverified complaints, presented facts out of context and included false innuendos, when considered as a whole, conveyed false meanings to the readers or implied meanings that are untrue.

100.    Such statements were highly offensive to Popo himself, but a reasonable person of ordinary sensibilities would also have found them to be highly offensive.

101.    Such statements were private matters not a of legitimate public concern.

102.    Patterson, Strojnik, and Strojnik Firm published private facts with a reckless disregard for the fact that reasonable persons would find the invasion highly offensive.

103.    As a direct and proximate consequence of such libel alleged herein, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damages in an amount to be established at trial.

104.    The aforementioned disclosure of private facts was committed wilfully and intentionally with malice, entitling Defendants/Counterclaimants/Third-Party Plaintiffs to exemplary and/or punitive damages in an amount to be established at trial to dissuade Patterson, Strojnik, and Strojnik Firm and/or otherwise deter such conduct in the future. Punitive damages are further appropriate due to Strojnik's, and Strojnik Firm's violation of the ethical rules of conduct and pattern of oppressive and harassing conduct. See Arizona Ethical Rules 3.6, 4.4 (a), 8.4(c), and 8.4(b)

105.    Patterson's, Strojnik's, and Strojnik Firm's disclosure of private facts, unless enjoined by a preliminary injunction and a permanent injunction judgment of this Court, will continue to cause great and irreparable injury to Defendants/Counterclaimants/Third-Party Plaintiffs. No adequate remedy at law exist for the injuries that are currently being suffered and are threaten to be suffered by Patterson, Strojnik, and Strojnik Firm.

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.    For compensatory damages in an amount according to proof at trial;

B.    For punitive damages in an amount according to proof at trial;

C.    For the issuance of a permanent injunction enjoining Patterson, Strojnik, and Strojnik Firm from disseminating private facts about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the internet, via hand-delivery, electronically, and/or in print;

D.    For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

E.    For such other and further relief as the Court deems just and proper.

/ / /

## COUNT SIX
## (INVASION OF PRIVACY -FALSE LIGHT – COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS STROJNIK AND STROJNIK FIRM)

106.    Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

107.    Defendants/Counterclaimants/Third-Party Plaintiffs were placed in a false light before the public due to Patterson's, Strojnik's and Strojnik Firm's authoring, creating and publishing statements to third-parties via media, print and word of mouth.

108.    The false light in which Defendants/Counterclaimants/Third-Party Plaintiffs have been placed is highly offensive to a reasonable person.

109.    Patterson, Strojnik, and Strojnik Firm knew the statements were false, acted in a disregard of the truth and/or despite the falsity of the statement with knowledge of the implications such statements would have on Defendants/Counterclaimants/Third-Party Plaintiffs.

110.    Defendants/Counterclaimants/Third-Party Plaintiffs have suffered damage to their reputations and businesses as result of Patterson's, Strojnik's and Strojnik Firm's conduct.

111.    The statements separately or in conjunction with one another were published by Patterson, Strojnik, and Strojnik Firm by reason of evil motive and/or malice toward Defendants/Counterclaimants/Third-Party Plaintiffs and were intended and/or designed to injure, and did in fact injure and defame.

112.    Punitive damages are appropriate as a result of Patterson's, Strojnik's, and Strojnik Firm's evil motive.

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.    For compensatory damages in an amount according to proof at trial;

B.    For punitive damages in an amount according to proof at trial;

C.    For the issuance of a permanent injunction enjoining Patterson, Strojnik, and Strojnik Firm from republishing any of their false and defamatory statements

about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the internet, via hand-delivery, electronically, and/or in print;

D.    For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

E.    For such other and further relief as the Court deems just and proper.

**COUNT SEVEN**
**(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) AGAINST**
**COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS**
**STROJNIK AND STROJNIK FIRM)**

113.    Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

114.    Patterson's, Strojnik's, and Strojnik Firm's extreme and outrageous conduct, as alleged herein, includes but is not limited to, harassment, extortion, defamation, and invasion of privacy, were intentionally and maliciously committed with the intent to humiliate Defendants/Counterclaimants/Third-Party Plaintiffs, inflict mental anguish, and emotional and physical distress, and was done in a wanton and reckless disregard of the consequences to Defendants/Counterclaimants/Third-Party Plaintiffs.

115.    Patterson, Strojnik, and Strojnik Firm intended to inflict mental anguish and emotional distress by disseminating statements that were false in that they include untrue statements, purposefully include unverified complaints, presented facts out of context and included false innuendos, when considered as a whole, conveyed false meanings to the readers or implied meanings that are untrue.

116.    As a direct and proximate result of such extreme and outrageous conduct, Defendants/Counterclaimants/Third-Party Plaintiffs did in fact suffer humiliation, mental anguish, and emotional stress, and will continue to suffer mental suffering if the outrageous conduct is permitted to continue.

117.    As    a    result    of    such    severe    emotional    distress, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damaged in an amount to be established at trial.

118.    The aforementioned infliction of emotional distress was committed wilfully and intentionally with malice, entitling Defendants/Counterclaimants/Third-Party Plaintiffs to exemplary and/or punitive damages in an amount to be established at trial to dissuade Patterson, Strojnik, and Strojnik Firm and/or otherwise deter such conduct in the future. Punitive damages are further appropriate due to Strojnik's, and Strojnik Firm's violation of the ethical rules of conduct and pattern of oppressive and harassing conduct. See Arizona Ethical Rules 3.6, 4.4 (a), 8.4(c), and 8.4(b)

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.    For compensatory damages in an amount according to proof at trial;

B.    For punitive damages in an amount according to proof at trial;

C.    For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

D.    For such other and further relief as the Court deems just and proper.

## COUNT EIGHT
## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS) AGAINST COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS STROJNIK AND STROJNIK FIRM)

119.    Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

120.    Patterson, Strojnik, and Strojnik Firm owed Defendants/Counterclaimants/Third-Party Plaintiffs  duties of care, including but not limited to, acting in a manner reasonably necessary to avoid inflicting humiliation, mental anguish, and emotional pain and distress.

121.    Patterson, Strojnik, and Strojnik Firm knew or should have known that their failure to exercise due care would cause Defendants/Counterclaimants/Third-Party Plaintiffs to suffer humiliation, mental anguish, and emotional distress.

122.    Patterson, Strojnik, and Strojnik Firm knew or should have known that disseminating statements that were false in that they include untrue statements, purposefully include unverified complaints, presented facts out of context and included false innuendos,

when considered as a whole, conveyed false meanings to the readers or implied meanings that are untrue would cause Defendants/Counterclaimants/Third-Party Plaintiffs to suffer humiliation, mental anguish, and emotional distress.

123.    Patterson, Strojnik, and Strojnik Firm breached its duties by committing the extreme and outrageous acts and omissions alleged herein, including but not limited to, harassment, extortion, defamation, and invasion of privacy, and did so with reckless disregard for the probability of causing emotional distress to Defendants/Counterclaimants/Third-Party Plaintiffs.

124.    Patterson's, Strojnik's, and Strojnik Firm's extreme and outrageous conduct, as alleged herein, includes but is not limited to, harassment, extortion, defamation, and invasion of privacy, were maliciously committed with the intent to humiliate Defendants/Counterclaimants/Third-Party Plaintiffs, inflict mental anguish, and emotional and physical distress, and was done in a wanton and reckless disregard of the consequences to Defendants/Counterclaimants/Third-Party Plaintiffs.

125.    As a direct and proximate result of such extreme and outrageous conduct, Defendants/Counterclaimants/Third-Party Plaintiffs did in fact suffer humiliation, mental anguish, and emotional stress, and will continue to suffer mental suffering if the outrageous conduct is permitted to continue.

126.    As a result of such severe emotional distress, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damaged in an amount to be established at trial.

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.    For compensatory damages in an amount according to proof at trial;

B.    For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

C.    For such other and further relief as the Court deems just and proper.

## COUNT NINE
## (CIVIL CONSPIRACY) AGAINST COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS STROJNIK AND STROJNIK FIRM)

127.    Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

128.    Patterson, Strojnik, and Strojnik Firm, and each of them, one with another, constituted an association of two or more "persons" that was formed and existed for the purpose of pursuing unlawful and/or tortuous objectives, thus constituting a conspiracy.

129.    Patterson, Strojnik, and Strojnik Firm, and each of them, one with another, through a conspiracy, common enterprise and common course of conduct, have wrongfully and through misrepresentations sought to deprive Defendants/Counterclaimants/Third-Party Plaintiffs of their business relationships and profits.

130.    Defendants/Counterclaimants/Third-Party Plaintiffs is informed and believes, and based thereon alleges, that the persons in said conspiracy reached an agreement with regard to the extortion of settlement payments from Defendants/Counterclaimants/Third-Party Plaintiffs to avoid the reporting of alleged criminal behavior, the dissemination of highly prejudicial and untrue statements to the public intending to harass and embarrass.

131.    Defendants/Counterclaimants/Third-Party Plaintiffs is informed and believes, and based thereon alleges, that the persons in said conspiracy reached an agreement with regard to the method for extorting of settlement payments from Defendants/Counterclaimants/Third-Party Plaintiffs, which included the threat of criminal prosecution, the dissemination of prejudicial and untrue statements to the public intending to harass and embarrass Defendants/Counterclaimants/Third-Party Plaintiffs.

132.    One or more persons of said conspiracy committed an unlawful and/or tortious, overt act in furtherance of said objective, including but not limited to threatening criminal prosecution unless monetary damages were paid and the dissemination of prejudicial and untrue statements to the public intending to harass and embarrass Defendants/Counterclaimants/Third-Party Plaintiffs.

133.    As a direct and proximate result of such conspiracy, unlawful and/or tortious actions, Defendants/Counterclaimants/Third-Party Plaintiffs did in fact suffer damages in an amount to be established according to the evidence, but include amounts suffered as a result of business interruption, mental anguish, damage to reputation, privacy invasion, harassment, and pecuniary loss from the trade libel.

134.    As    a    result    of    such    severe    emotional    distress, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damaged in an amount to be established at trial.

WHEREFORE,  Defendants/Counterclaimants/Third-Party  Plaintiffs  request  that judgment be entered against Patterson, Strojnik, and Strojnik Firm as follows:

A.    For compensatory damages in an amount according to proof at trial;

B.    For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

C.    For such other and further relief as the Court deems just and proper.

## COUNT TEN
## (AIDING AND ABETTING) AGAINST DOES I-X)

135.    Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

136.    In orchestrating their scheme to defame and otherwise cause injury to Defendants/Counterclaimants/Third-Party Plaintiffs, Patterson, Strojnik, and Strojnik Firm looked to certain individuals, their identities currently unknown, for assistance in gathering of materials and information, and for development of additional unlawful and/or tortious acts directed at Defendants/Counterclaimants/Third-Party Plaintiffs.

137.    Upon    information    and    belief,    Does    1-X    provided Defendants/Counterclaimants/Third-Party  Plaintiffs  information  regarding  unverified complaints  with  the  intention  of  facilitating  further  harassment  and  extortion  of Defendants/Counterclaimants/Third-Party Plaintiffs.

138.   Upon information and belief, Patterson, Strojnik, and Strojnik Firm utilized the unverified complaints for the purpose of making defamatory statements about Defendants/Counterclaimants/Third-Party Plaintiffs and/or coerce others into making false statements.

139.   Does I – X were aware that Patterson, Strojnik, and Strojnik Firm was going to engage in tortious conduct.

140.   Does 1-X provided substantial assistance to Patterson, Strojnik, and Strojnik Firm with the intent of promoting their tortious conduct directed at Defendants/Counterclaimants/Third-Party Plaintiffs.

141.   As a direct and proximate result of such aiding and abetting, Defendants/Counterclaimants/Third-Party Plaintiffs did in fact suffer damages in an amount to be established according to the evidence, but include amounts suffered as a result of business interruption, mental anguish, damage to reputation, privacy invasion, harassment, and pecuniary loss from the trade libel.

142.   As a result of such aiding and abetting, Defendants/Counterclaimants/Third-Party Plaintiffs have been generally, specifically and consequentially damaged in an amount to be established at trial.

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that judgment be entered against Does I -X as follows:

A.   For compensatory damages in an amount according to proof at trial;

B.   For cost of suit incurred herein, including but not limited to, attorneys' fees, costs and expert witness fees; and

C.   For such other and further relief as the Court deems just and proper.

## COUNT ELEVEN
## (INJUNCTIVE RELIEF AGAINST COUNTER-DEFENDANT PATTERSON & THIRD-PARTY DEFENDANTS STROJNIK AND STROJNIK FIRM)

143.   Defendants/Counterclaimants/Third-Party Plaintiffs reiterate each of the above allegations as if set forth in full.

144.    By this Verified Complaint, Motion for Temporary Restraining Order, and memorandum of support thereof, Defendants/Counterclaimants/Third-Party Plaintiffs request a preliminary injunction enjoining Patterson, Strojnik, and Strojnik Firm from continuing to publish any of their false and defamatory statements about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the internet, via hand-delivery, electronically, and/or in print.

145.    Defendants/Counterclaimants/Third-Party Plaintiffs further request a preliminary injunction enjoining Strojnik and Strojnik Firm from seeking to publicize the facts of this litigation, whether through the internet, social media, pamphlets, picketing, or otherwise consistent with Arizona Ethical Rule 3.6.

146.    Without the entry of a temporary restraining order, Defendants/Counterclaimants/Third-Party Plaintiffs will suffer immediate, substantial and irreparable harm.

147.    As shown in Defendants/Counterclaimants/Third-Party Plaintiffs' Memorandum in Support of Temporary Restraining Order and Preliminary Injunction, which is incorporated by reference herein, the balance of factors considered in determining whether to grant an injunction demonstrate that the injunction should be granted because i) Defendants/Counterclaimants/Third-Party Plaintiffs are likely to succeed on the merits; (ii) Defendants/Counterclaimants/Third-Party Plaintiffs will be irreparably harmed if the injunction is not granted; iii) a balance of hardships favors Defendants/Counterclaimants/Third-Party Plaintiffs; and iv) public policy favors the requested relief.

WHEREFORE, Defendants/Counterclaimants/Third-Party Plaintiffs request that:

A.    The issuance of a temporary restraining order enjoining Patterson, Strojnik, and Strojnik Firm from republishing any of their false and defamatory statements about Defendants/Counterclaimants/Third-Party Plaintiffs, either orally, via the internet, via hand-delivery, electronically, and/or in print; and

D.    For cost of suit incurred herein, including but not limited to, attorneys' fees,

costs and expert witness fees; and

E.    For such other and further relief as the Court deems just and proper.

## VERIFICATION

The undersigned affirms under penalties of perjury that the contents of the foregoing Counter-Complaint and Third-Party Complaint are true to the best of my knowledge, information and belief.

RESPECTFULLY SUBMITTED this 31st day of March, 2015.

HYMSON GOLDSTEIN & PANTILIAT, PLLC

By: _____
EDDIE A. PANTILIAT
*Attorneys for Defendants Two Fingers, LLC dba Stone and Vine Urban Italian Restaurant, Four Fingers, LLC dba Salt & Lime Modern Mexican Grill, Six Fingers, LLC dba Black & Bleu Restaurant, and Joseph M. Popo and Gabriella Popo*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, the foregoing document entitled, **TWO FINGERS, LLC'S, FOUR FINGERS, LLC'S, SIX FINGERS, LLC'S AND JOSEPH M. POPO AND GABRIELLA POPO'S** was e-filed and served via electronic service through the United States District Court for the District of Arizona's ECF System and to the following ECF registrants:

Peter K. Strojnik
THE STROJNIK FIRM L.L.C.
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, AZ 85016

By: _____
Susan Montalvo