Eddie A. Pantiliat (State Bar No. 015231)
**HYMSON GOLDSTEIN & PANTILIAT, PLLC**
16427 N. Scottsdale Road, Suite 300
Scottsdale, Arizona 85254
Telephone: 480-991-9077
minute@legalcounselors.com

Jason R. Mullis (#024289)
jmullis@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
2525 E. Camelback Road, Suite 450
Phoenix, Arizona 85016-4210
Phone: 602-441-1300 ♦ Fax 602-441-1350

*Attorneys for Two Fingers, LLC dba Stone and Vine Urban Italian Restaurant, Four Fingers, LLC dba Salt & Lime Modern Mexican Grill, Six Fingers, LLC dba Black & Bleu Restaurant, and Joseph M. Popo and Gabriella Popo*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| AMY PATTERSON,<br><br>    Plaintiff,<br><br>v.<br><br>TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO,<br><br>    Defendants.<br><br>TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO,<br><br>    Counterclaimants,<br><br>v. | Case No. 2:15-cv-00494-NVW<br><br>**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>[Assigned to The Hon. Neil V. Wake] |

LEGAL:10453-0075/4299462.1

| | |
|---|---|
| 1 | AMY PATTERSON, |
| 2 | Counter defendant. |
| 5 | TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO, |
| 10 | Third-Party Plaintiffs, |
| 11 | PETER K. STROJNIK; THE STROJNIK FIRM L.L.C. an Arizona limited liability company; and Does I - XX, |
| 13 | Third-Party Defendants. |

Pursuant to Rule 65, *Arizona Rules of Civil Procedure*, and A.R.S. § 12-1801, Defendants Two Fingers, LLC, Four Fingers, LLC, Six Fingers, LLC and Joseph M. Popo (collectively "Defendants'), by and through undersigned counsel, moves for a temporary restraining order and a preliminary injunction restraining enjoining Plaintiff, Plaintiff's attorneys, officers, agents, servants, employees and any other person in active concert or participation with them who receive actual notice of the order from posting any defamatory and/or libelous and prejudicial information on the internet or from handing out pamphlets or picketing at Defendants' places of business with defamatory and/or libelous and prejudicial information about Defendants or his businesses.

This Application is made for the reason that Plaintiff and her attorney have been and continue to post or otherwise disseminate defamatory and prejudicial information on the internet, hand out untrue and defamatory pamphlets, and attempt to have Defendants evicted, all of which have caused and continue to cause Plaintiffs to suffer immediate and irreparable injury, loss, and damage not remediable through monetary damages. Unless Plaintiff and

Plaintiff's attorney's conduct is enjoined and restrained by this Court, Defendants will continue to suffer irreparable injury, loss and damage.

This Application for Temporary Restraining Order and Preliminary Injunction is being made with notice to Defendants. This Application is supported by the accompanying Memorandum of Points and Authorities, Plaintiff's Verified Complaint filed herewith,, and the Declaration of Joseph M. Popo, attached hereto as Exhibit A.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

Plaintiff Patterson was employed as a server, and later manager, by Two Fingers, LLC, however, Defendant Patterson provided services to Four Fingers, LLC and Six Fingers, LLC, albeit on a limited basis. *Affidavit of Joseph M. Popo*, attached hereto as Exhibit "A." Plaintiff Patterson resigned her position in December of 2014, and upon being terminated immediately instead of being permitted to continue working for two additional weeks, determined to exact retribution against those who had "underestimated her." *See Patterson's Facebook Posts*, attached hereto as Exhibit "B." Patterson found a more than willing compatriot in Peter Strojnik, who utilized every conceivable method available to pressure and coerce Defendants into buying their silence. Such efforts included, but are not limited to:

    a)    Threatening to disclose alleged and unsubstantiated affairs to Popo's wife[1];

    b)    Threatening to issue "monthly press releases targeting the Phoenix area"[2];

    c)    Threatening to seek $1,300,000 in damages unless Popo agreed to pay Patterson and Strojnik $500,000;

    d)    Threatening to report Defendants to the "U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, and Federal Bureau of Investigations[3]; and

---

[1] See Demand Letter, page 1, attached hereto as Exhibit "C."

[2] See Demand Letter, page 7, attached hereto as Exhibit "C."

[3] See Demand Letter, page 3, attached hereto as Exhibit "C."

e) Threatening to report "Mr. Popo's actions to the Phoenix Police Department with the request for criminal felony battery and assault charges, and reporting all three LLC's to the Department of Homeland Security and Federal Bureau of Investigations for their suspected hiring and employment of illegal foreign workers"[4].

When it became apparent that Defendants would be unwilling to capitulate to their threats, Strojnik embarked on a course of action intending to "destroy these restaurants," "ensure he [Popo] is punished beyond all comprehension," and "ensure that Mr. Popo and his restaurants are punished mercilessly in a court of law." See *Correspondence*, attached hereto as Exhibit "D"; and *Website Snapshots*, attached hereto as Exhibit "E." To such ends, Strojnik sought to publicize the uncorroborated allegations through the following mediums:

a) Creating the website www.stoneandvinesexallegations.com[5];

b) Posting comments on social media websites such as Facebook[6], LinkedIn and the Dirty[7];

c) Contacting CBS 5 to publicize the allegations to the public at large[8];

d) Posting flyers at Defendants' principle place of business[9];

e) Attempting to have Defendants evicted from their premises by harassing Defendants' landlord[10]; and

f) Attempting to disparage Defendants' attorney, Ed Pantiliat, by posting his picture on his website under the tagline "Shame On."[11]

---

[4] See Demand Letter, page 8, attached hereto as Exhibit "C."

[5] See *Website Snapshots*, attached hereto as Exhibit "E."

[6] See *Facebook Posts*, attached hereto as Exhibit "F."

[7] See *Website Snapshots* from www.thedirty.com/local/scottsdale-1/shame-stone-vine-urbn-italian-restaurant/; attached hereto as Exhibit "G."

[8] See Correspondence from Strojnik to CBS 5, attached hereto as Exhibit "H."

[9] See Flyer, attached hereto as Exhibit "I."

[10] See Correspondence from Strojnik, attached hereto as Exhibit "J."

[11] See *Website Snapshots*, attached hereto as Exhibit "E."

With respect to Defendants' landlord, Strojnik makes statements such as "our beef is with SV and this sick man Popo not your client," "I don't really see any negative impact to 9400 considering that's some prime real estate that can be re-filled with another lessee quite quickly," and "I am very sure 9400 would be much more concerned about leasing to a company that is alleged to be violating federal immigration law verse some little 'ole fliers, and that your client certainly does not wish to aid or abet such activity."[12] Defendants' landlord was concerned with not only the impact Plaintiff's, Strojnik's and Strojnik Firm's conduct would have upon Defendants, but the businesses of other tenants at the shopping center as well, issuing a cease and desist letter to Strojnik[13].

Strojnik, unapologetic for his action, has stated as follows:

> "as we speak, my creative is working on the artwork for the standard-sized "Shame On" banner that will be placed in a public area in front of Stone and Vine once this week during happy hour times. The next week, it will be placed there two days. The following week, three days. And so on. And when it becomes every day, I will ask my creative to print a new banner for Salt & Lime. And so on, and so on. **You will be surprised at how inexpensive this is and how experienced I am at this**."[14] [emphasis added]

Such comments demonstrate emphatically that Strojnik lacked any remorse for his conduct and knew precisely what consequences such extrajudicial statements would create. It is within this context that Strojnik's and Strojnik Firm's posts on "The Dirty" could not have been construed to have been made with any intent other than to sensationalize the allegations, elicit distasteful responses, embarrass, harass or otherwise damage Defendants' reputations. Indeed, Strojnik himself had previously been targeted by anonymous posters on this website, explaining his comment that "this website seems to be an effective tool when used appropriately, which is why I post here. Please see website stoneandvinesexallegations for more information…"[15] Unfortunately, once comments are solicited from the public at large,

---

[12] See Correspondence from Strojnik, attached hereto as Exhibit "J."

[13] See Cease and Desist Letter, attached hereto as Exhibit "K."

[14] See Correspondence from Strojnik, attached hereto as Exhibit "L."

[15] See *Website Snapshots,* attached hereto as Exhibit "M."

one cannot control the nature of the responses received. The public backlash Strojnik and Strojnik Firm intended to create against Defendants backfired, with anonymous posters, the identities unknown to Defendants, lashing out in a manner, although admittedly deplorable, consistent with language of posters on the website generally.

## II. ARGUMENT

For issuance of a temporary restraining order and preliminary injunction in Arizona, the following prerequisites must be established: (1) a likelihood of success on the merits; (2) the possibility of irreparable harm to the Plaintiff if relief is not granted; (3) a balance of hardships favoring the Plaintiff; and (4) public policy favoring the requested relief. *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II,* 176 Ariz. 275, 860 P.2d 1328 (App. 1993), *review dismissed* 179 Ariz. 180, 877 P.2d 279 (1994). The critical element in this analysis is the relative hardship to the parties. *Shoen v. Shoen,* 167 Ariz. 58, 63, 804 P.2d 787, 792 (App. 1990). To meet this burden, the moving party may establish either (1) probable success on the merits and the possibility of irreparable injury; or (2) the presence of serious questions and the balance of hardships tip sharply in his favor. *Id.* Plaintiff meets this standard and a temporary restraining order and preliminary injunction are therefore warranted.

### A. Defendants Will Succeed on the Merits

A party seeking a temporary restraining order and/or preliminary injunction assumes a lesser burden of proof of likelihood of success on the merits than does a party moving for summary judgment and thus, does not have to show entitlement to judgment as a matter of law. *See Powell-Cerkonev v. TCR-Montana Ranch Joint Venture, II,* 176 Ariz. 275, 280, 860 P.2d 1328, 1333 (App. 1993). Rather, a party seeking a temporary restraining order and preliminary injunction must merely show probable success on the merits of the underlying action. *Id.* Here, Defendants can establish that they will succeed on the merits as the conduct of Peter Strojnik, an Arizona licensed attorney, is arguably a violation of Arizona Ethical Rule 3.6 ("a lawyer who is participating or has participated in the investigation or litigation of a matter shall not make extrajudicial statements that the lawyer knows or

reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter).

Defendants assert multiple causes of action against Plaintiff arising out of the posting of untrue and defamatory statements on the internet as well as for Plaintiffs' efforts to disrupt operations at Defendants' business premises.. To recover in a defamation action where the plaintiff is a private person, as here, the plaintiff must prove the defendant published a false and defamatory statement either (1) knowing the statement was false and defamatory, (2) in reckless disregard of the statement's character, or (3) negligently failing to ascertain the statements character. *See Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977). To be "defamatory," "a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). And, negligence is conduct that creates an unreasonable risk of harm and the failure to use that amount of care a reasonably prudent person would use under similar circumstances. *Peagler,* 114 Ariz. at 315, 560 P.2d at 1222.

As noted *supra*, each of Plaintiff's statements are false in that they cite cherry-picked statements that are taken out of context and include statements from unproven and untrue allegations of unverified complaints against Plaintiff that are presented out of context and combined with false statements and innuendos, resulting in false statements being conveyed to the readers by implying meanings that are untrue. While there are numerous examples on the website, the most blatant and prejudicial statement implies that Popo has pedophilic tendencies arising out of a string of text messages. *Affidavit of Joseph M. Popo*, attached hereto as Exhibit "B." Plaintiff knew these statements were untrue and defamatory but nonetheless forged ahead determined to injure Defendants' business and/or reputation. Plaintiffs failed to use the care a reasonably prudent person would have used under these circumstances; nor did Plaintiff act in a way to ascertain the truthfulness of the statements but instead ignored any signs of untruthfulness in an effort to damage Defendants.

Even assuming Plaintiff's and Peter Strojnik's statements are true, which they are not, Peter Strojnik's comments were intended solely to embarrass, burden, or to use Peter Strojnik's own words, "destroy" Defendants. Peter Strojnik has been unapologetic in proclaiming his motivation to "destroy these restaurants," "ensure he [Popo] is punished beyond all comprehension," and "ensure that Mr. Popo and his restaurants are punished mercilessly in a court of law." *See Correspondence*, attached hereto as Exhibit "D"; and *Website Snapshots*, attached hereto as Exhibit "E." While private citizens may be permitted to disseminate information in the litigation context, Arizona attorneys are subject to a higher standard. *See Arizona Ethical Rules* 4.4 (a) (a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden any other person); and 8.4(c) (prohibition against a lawyer engaging in conduct that is prejudicial to the administration of justice).

Perhaps most importantly, Peter Strojnik improperly threatened criminal prosecution through the Phoenix Police Department, Federal Bureau of Investigation and Department of Homeland Security if Defendants did not pay Plaintiff's requested demand. *See Demand Letter*, page 8, attached hereto as Exhibit "C." Pursuant to A.R.S. § 13-1804(a)(5), a person is guilty of theft by extortion by knowingly seeking to obtain property by threating to accuse anyone of a crime or bringing criminal charges. Such conduct is similarly in violation of Arizona Ethical Rule 8.4(b), which prohibits a lawyer from committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. Consequently, the statements forming the subject of the Temporary Restraining Order may be restrained because they are false or because the statements have been made by an attorney in violation of Arizona's Ethical Rules.

**B.    Plaintiff Will Suffer Irreparable Harm Unless a Temporary Restraining Order is Issued**

Under this factor, a party must show a possibility of irreparable injury not remediable by damages. *Shoen*, 167 Ariz. at 63. Although monetary damages can provide an adequate remedy at law and thus remediate damages at times, where a loss is uncertain, monetary

damages may be inadequate. *IB Property Holdings, LLC v. Rancho Del Mar Apartments Ltd. Partnership*, 228 Ariz. 61, 73, 263 P.3d 69, 73 (App. 2011). Difficulty of proving damages with reasonable certainty aids in establishing uncertainty of loss and irreparable injury. *Id.*; *see also* Restatement (Second) of Contracts § 360 cmt. b (damages inadequate remedy if injured party can prove some but not all loss).

Consistent with these authorities, the Ninth Circuit has concluded that "[t]he threat of being driven out of business is sufficient to establish irreparable harm." *American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). And, "[r]easonable apprehension of threatened injury will suffice." *Id.* at 1473. Moreover, a party who has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to another or by a lessening of the goodwill associated with its products, may seek an injunction. *See U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir.1986). Inability to collect on a damage award due to insolvency or otherwise also constitutes irreparable injury. *See Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).

In *Cornwell v. Sachs*, 99 F. Supp. 2d 695 (E.D. Va. 2000), the defendant, an author, became disillusioned that plaintiff, another author, had stolen his ideas for a book. *Id.* at 697. Accordingly, the defendant began a series of harassing letters to plaintiff, which eventually escalated to the defendant creating a website to publish defamatory material about the plaintiff and his forthcoming book. *Id.* at 701. Eventually, the defendant created stickers that he affixed to his own books and sold into the marketplace defaming the plaintiff. *Id.* Consequently, the plaintiff brought suit and sought injunctive relief against the use of defamatory statements. *Id.* at 702. In the end, the Court issued a preliminary injunction, reasoning that, although any injury due to lost sales could theoretically be compensable by money damages, the monetary damages from the false and defamatory statements/advertising would be absolutely impossible to determine. *Id.* at 708. The court also concluded that the plaintiff's loss to reputation could not be remedied absent injunctive relief. *Id.* at 707-08.

Similarly, here, Defendants' monetary damages arising from Plaintiff and Plaintiff's

counsel's conduct are substantial and will only continue to increase if the offensive conduct is not enjoined. Irrespective of the potential to recover monetary damages from Patterson, Strojnik and the Strojnik firm, it may be too late for the individuals Defendants employs if their jobs are terminated as a result of the landlord cancelling the lease, failing to renew and/or customers electing to dine elsewhere. Moreover, in consequence of Plaintiff's and Plaintiff's counsel's' conduct in posting untrue and defamatory statements on the internet, protesting Defendants' business, and handing out defamatory and untrue pamphlets, Defendants have already suffered by way of his personal and business reputation and goodwill in the community, which constitutes an appropriate basis for injunctive relief. *See id.*

### C. The Balance of Potential Hardship Weights Heavily in Defendants' Favor

If Defendants can establish probable success on the merits and the possibility of irreparable injury, then the balance of hardship weighs in Defendants' favor. *The Power P.E.O., Inc. v. Employees Ins. of Wausau*, 210 Ariz. 559, 562, 38 P.3d 1224, 1227 (App. 2002). As noted *supra*, it is clear that Defendants are likely to succeed on the merits of its underlying claim and has suffered irreparable injury from Plaintiff's conduct, tipping the balance of hardships in Defendants' favor..

### D. Public Policy Favors the Granting of Defendants' Requested Relief

Public policy is not served in Arizona by protecting false, misleading and defamatory speech. The law of defamation (libel and slander) imposes broad liability for the publication of false matter which tend to injure the reputation of others. *See* Prosser, Torts 777 (1941); Restatement (Frist) of Torts § 558 (1938). "It embodies the important public policy that individuals and business entities should generally be free to enjoy their reputations unimpaired by false and defamatory attacks." *Rainier's Dairies v. Raritan Val. Farms*, 19 N.J. 552, 557 (N.J. 1955). Because Plaintiff's and Plaintiff's counsel's statements are false and otherwise defamatory, they have no place in the community and/or commercial sector and public policy therefore favors Defendants' requested injunctive relief.

Moreover, since the creation of website designed to communicate extrajudicial

LEGAL:10453-0075/4299462.1                    -10-

statements and create publicity is prohibited by Arizona Ethical Rule 3.6 ("a lawyer who is participating or has participated in the investigation or litigation of a matter shall not make extrajudicial statements that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter"), any argument that public policy would be advanced by permitting this conduct to continue is wholly disingenuous.

### III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully requests that the Court issue a temporary restraining order and preliminary injunction enjoining Plaintiff's and Plaintiff's counsel from publishing false and defamatory statements and/or seeking to publicize the facts of this litigation, whether on the internet, social media, through pamphlets, picketing, or otherwise.

RESPECTFULLY SUBMITTED this 31st day of March, 2015.

HYMSON GOLDSTEIN & PANTILIAT, PLLC

By: _____
EDDIE A. PANTILIAT
*Attorneys for Defendants Two Fingers, LLC dba Stone and Vine Urban Italian Restaurant, Four Fingers, LLC dba Salt & Lime Modern Mexican Grill, Six Fingers, LLC dba Black & Bleu Restaurant, and Joseph M. Popo and Gabriella Popo*

WOOD, SMITH, HENNING & BERMAN LLP

By: _____
JASON R. MULLIS
Attorneys for Defendants Two Fingers, LLC dba Stone and Vine Urban Italian Restaurant, Four Fingers, LLC dba Salt & Lime Modern Mexican Grill, Six Fingers, LLC dba Black & Bleu Restaurant, and Joseph M. Popo and Gabriella Popo

///

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of March, 2015, the foregoing document entitled, **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** was e-filed and served via electronic service through the United States District Court for the District of Arizona's ECF System and to the following ECF registrants:

Peter K. Strojnik
THE STROJNIK FIRM L.L.C.
Esplanade Center III
2415 East Camelback Road, Suite 700
Phoenix, AZ 85016

Eddie A. Pantiliat
HYMSON GOLDSTEIN & PANTILIAT, PLLC
16427 N. Scottsdale Road, Suite 300
Scottsdale, Arizona 85254

_____
Susan Montalvo