1        **UNITED STATES DISTRICT COURT**

2          **FOR THE DISTRICT OF ARIZONA**

3            _____

4

**Amy Patterson,**                    )
5                                      )    No. **CV 15-0494-PHX-NVW**
                 Plaintiff,            )
6                                      )
          vs.                          )    Phoenix, Arizona
7                                      )    April 3, 2015
**Two Fingers LLC, et al.,**           **)**   2:26 p.m.
8                                      )
                 Defendants.           )
9  _____ )

10

11          **BEFORE:  THE HONORABLE NEIL V. WAKE, JUDGE**

            **REPORTER'S TRANSCRIPT OF PROCEEDINGS**
12
              (*Scheduling Conference on TRO*)
13

**APPEARANCES:**
14  For the Plaintiff:
            STROJNIK FIRM LLC
15          By:  **Peter Strojnik, Sr., Esq.**
            By:  **Peter Strojnik, Jr., Esq.**
16          2415 E. Camelback Road, Suite 700
            Phoenix, Arizona 85016
17
    For the Defendant:
18          HYMSON GOLDSTEIN & PANTILIAT PLLC
            By:  **Eddie A. Pantiliat, Esq.**
19          By:  **Jason R. Mullis, Esq.**
            16427 N. Scottsdale Road, Suite 300
20          Scottsdale, AZ 85254

21  Official Court Reporter:
    Laurie A. Adams, RMR, CRR
22  Sandra Day O'Connor U.S. Courthouse, Suite 312
    401 West Washington Street, Spc 43
23  Phoenix, Arizona 85003-2151
    (602) 322-7256
24
    Proceedings Reported by Stenographic Court Reporter
25  Transcript Prepared by Computer-Aided Transcription

```
1                    P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  Civil Case 2015-494, Amy

3      Patterson versus Two Fingers, LLC, et al.  This is the time set

4      for a scheduling conference.

5              Counsel, please announce for the record.              14:26:06

6              MR. STROJNIK, SR.:  Good afternoon, Your Honor.  Your

7      Honor, my name is Peter Strojnik.  For clarification, perhaps I

8      should be referred to as Strojnik, Sr., because my lead

9      counsel, co-counsel, Peter K. Strojnik, has the same name.  I

10     became aware of this case yesterday.  I did actually file a     14:26:19

11     notice of appearance then.

12             THE COURT:  All right.

13             MR. PANTILIAT:  Good afternoon, Your Honor.  I'm Ed

14     Pantiliat.  I represent the defendants along with my

15     co-counsel, Mr. Jason Mullis.  I represent Two Fingers, Four   14:26:31

16     Fingers, Six Fingers, and the Popo defendants.

17             THE COURT:  Counsel, none of you have been filing

18     courtesy paper copies of your filings.  You are required to

19     supply the Court with one paper copy of your filings within 24

20     hours of them being filed if they are more than 10 pages long.  14:26:48

21     So please get those in.

22             And Mr. Pantiliat, I can't find a form of Temporary

23     Restraining Order that you submitted.  Have you?

24             MR. MULLIS:  Your Honor, we did have a Temporary

25     Restraining Order and I will send it over.                     14:27:07
```

1          THE COURT:  I can't find it.  Do you have a copy?

2          Do you know what docket number it is in our filings?

3     What document number is it?  I can't find it in our filings.

4          MR. MULLIS:  I'm trying to identify here.

5          THE COURT:  It's not attached to your motion.                    14:28:20

6     There's no form of injunction attached to your motion or any of

7     your memoranda, I don't think.

8          MR. MULLIS:  Your Honor, it looks like in the records

9     I have, I do not have a copy of that with me today.

10         THE COURT:  Where is it on our index?                             14:29:30

11         MR. MULLIS:  I thought it was supposed to be attached

12    to Number 14.

13         THE COURT:  What is Number 14?

14         MR. MULLIS:  It is the petition to show cause for the

15    Order to Show Cause.                                                   14:29:40

16         THE COURT:  I thought I looked at that.

17         Nick, pull it up and see if there's a form of order

18    attached to it.

19         It's an Order to Show Cause.  It's not a restraining

20    order.                                                                 14:30:11

21         MR. MULLIS:  Apologize, Your Honor.

22         THE COURT:  Do you have a paper copy?

23         MR. MULLIS:  I do not have a paper copy for some

24    reason.

25         THE COURT:  So I really don't know what you are asking            14:30:29

```
1   for.  And I set this as a scheduling conference to set this for

2   scheduling.  And part of that has to do with how much time you

3   think you want and how much time I will give you, the degree of

4   urgency.

5           So Mr. Peter K. Strojnik, are you the third party        14:30:47

6   defendant?

7           MR. STROJNIK, JR.:  Yes, Your Honor.

8           THE COURT:  This doesn't look like a third party

9   complaint at all.  It looks like an additional counter

10  defendant.  Have you all thought about that, defendants?  You    14:31:04

11  can't just sue anybody you want by calling them a third party

12  defendant.  It has to be a matter of indemnity.  It looks like

13  you are asserting an independent claim against Mr. Strojnik.

14          Is that the case?

15          MR. PANTILIAT:  That is the case, Your Honor.            14:31:15

16          THE COURT:  So you need to clean up your pleadings to

17  name him as an additional counter defendant, which the Court

18  will grant you leave to do that.

19          MR. PANTILIAT:  Thank you, Your Honor.

20          THE COURT:  So I want to talk about the degree of        14:31:27

21  urgency.  And, you know, a significant part of that, and I will

22  hear from Mr. Pantiliat on that.  A significant part of that is

23  the extent to which Mr. Strojnik is willing to cease this

24  conduct until we can get in court to discuss it.

25          So go ahead.                                             14:31:50
```

```
 1              MR. PANTILIAT:  Thank you, Your Honor.

 2              THE COURT:  Please come up to the podium where the

 3    microphone is better.

 4              MR. PANTILIAT:  Thank you, Your Honor.

 5              The reason that we're seeking the injunction against      14:32:01

 6    harassment against not only the plaintiff but her counsel is

 7    because they have engaged in a systematic and comprehensive

 8    campaign against my client.

 9              THE COURT:  Are you seeking an injunction against both

10    Ms. Patterson and Mr. Strojnik?                                    14:32:14

11              MR. PANTILIAT:  Yes, Your Honor.

12              THE COURT:  Go ahead.

13              MR. PANTILIAT:  The reason being is because her

14    attorney, counsel, has created websites

15    StoneVineSexualAllegations.com.  He's also created and            14:32:26

16    disseminated flyers.  He is also personally posting, on

17    Facebook, posts on my client's businesses, making allegations

18    against my client.  He's using my client's images in his photo

19    alleging that he's a sexual predator.  They have papered the

20    parking lot several times of my client's businesses with flyers   14:32:49

21    on all the vehicles of the customers.

22              THE COURT:  What's your basis -- I will ask Mr.

23    Strojnik in a minute -- what's your basis for saying he's doing

24    this in addition to --

25              MR. PANTILIAT:  Because he has created the website.     14:33:00
```

1  He is personally making the posts.  He is personally appearing

2  on the posts to contact him.  These are all conducts that are

3  being performed by him personally, Your Honor.  Whether or not

4  they are on behalf of his client, I'm not sure.

5          THE COURT:  What's our degree of urgency?  Have you          14:33:17

6  talked with Mr. Strojnik about voluntarily ceasing this until

7  we can promptly get into court to have a hearing on it?

8          MR. PANTILIAT:  Well, Your Honor, we did that before.

9  We asked him to take down the website and not to engage in

10  these propagandist tactics while we were conducting an          14:33:32

11  investigation, perhaps trying to resolve this claim amicably.

12  There was a settlement offer made and rejected.

13          THE COURT:  Right now all I'm talking about is the

14  temporary restraining order.

15          MR. PANTILIAT:  Correct, Your Honor.  Didn't believe          14:33:47

16  if we asked him to take up them down he would listen.  We've

17  asked him several times.  He's also contacted our landlord,

18  made derogatory allegations to our landlord regarding our

19  business -- alleged business practices.  Our landlord issued

20  him a cease and desist letter from their own counsel.  This is          14:34:02

21  just going on.  Every day there's something new, something

22  different, new post, new site.  There's a site called dirty.com

23  that he's posting on as well.  He's involving other businesses

24  that apparently had a relationship to his client whatsoever.

25  And it's very harmful.  He's alleging an adulteress affair on          14:34:23

```
 1    behalf of my client and it's causing angst and discord in his

 2    marriage.

 3            THE COURT:  How much time do you want -- well, first

 4    of all, on a temporary restraining order the Court can consider

 5    the affidavits.  Is there more you want in terms of any live          14:34:38

 6    evidence?

 7            MR. PANTILIAT:  Not today, Your Honor.

 8            THE COURT:  I mean, or on a hearing.  I'm here to talk

 9    about setting a hearing at which time I will rule on your

10    motion promptly.                                                       14:34:54

11            MR. PANTILIAT:  Thank you.

12            THE COURT:  Do you wish to present any evidence other

13    than the affidavit?

14            MR. PANTILIAT:  No, Your Honor.  Just the affidavit.

15            THE COURT:  All right.                                         14:35:01

16            MR. PANTILIAT:  So we can get the hearing done in an

17    expeditious manner and I'd like a schedule as soon as possible.

18            THE COURT:  Who is going to be counsel on this one?

19            MR. STROJNIK, SR.:  I am, Your Honor.

20            THE COURT:  All right.  So first question is, I'm             14:35:13

21    looking at addressing this.  And the first question, Mr.

22    Strojnik, is -- and I guess your clients include your son now,

23    too, correct?

24            MR. STROJNIK, SR.:  My co-counsel, yes.

25            THE COURT:  Right.  The first question is, is are you         14:35:33
```

1   all willing to just maintain a quiet status quo for a brief

2   period of time while the Court can consider this and rule on

3   it?

4           MR. STROJNIK, SR.:  Well, in fact, Your Honor, when we

5   walked up to the courthouse today I extended my hand to        14:35:47

6   counsel.  He said I'm not going to shake your hand.  I never

7   met counsel.  Apparently there's a great deal of bad blood

8   between the parties and I think it's time for the adults to

9   come into the case and try to resolve this matter.  I would be

10  more than happy to discuss the matter with counsel.            14:36:02

11          THE COURT:  I'm really not talking about discussion.

12  I'm talking about an agreement now to stop all this until the

13  Court can address it and I can address it early next week if

14  not later today.

15          MR. STROJNIK, SR.:  I can, Your Honor, but I would      14:36:17

16  like to be heard on two issues, if I may, before you make a

17  decision on this.

18          THE COURT:  Well, I'm asking you whether you are --

19          MR. STROJNIK, SR.:  Yes.  Yes.  Absolutely.

20          THE COURT:  -- agreeing.                                14:36:26

21          MR. STROJNIK, SR.:  Absolutely.  Now we can take the

22  website down but that takes a little bit of time.  But we can

23  do it as expeditiously as possible.

24          But what I would like to address, Your Honor, is the

25  following:  You have heard a lot of factual issues, but there  14:36:37

1    is a primary, very fundamental constitutional issue.  And that

2    issue is whether or not district courts have generally imposed

3    prior restraint on allegedly defamatory speech.  From the

4    Supreme Court on down, and I have researched there between

5    yesterday and today, but from the Supreme Court on down all          14:37:00

6    decisions hold that it is prior restraint --

7          THE COURT:  I don't think so, Mr. Strojnik.  I think

8    for commercial defamation the Court can restrain that.  And

9    this is classic commercial defamation.

10          MR. STROJNIK, SR.:  What I would like to do, and what        14:37:17

11    I had begun doing before I appeared before the Court today, I

12    would like to present you with a memorandum of this issue.  I

13    believe I can do that by Monday.  And I would just like to

14    point out to you the cases where they do the exact same thing,

15    websites.  And there are some cases where district courts           14:37:39

16    actually find that unions are engaged in intimidating tactics

17    and the courts uniformly hold it doesn't matter.  And the

18    reason for that, Your Honor, is that on the one hand, the

19    speech may be chilled by the potential of damages in a

20    defamation action.  But when the Court issues an injunction,        14:37:59

21    speech is frozen.  It is ultimate.  It is final.

22          THE COURT:  No, it's not final.  It's only for the

23    very brief period of time the Court needs to reach a fuller

24    adjudication on the merits.

25          MR. STROJNIK, SR.:  Yes.  Of course I defer to that          14:38:17

1    opinion because it is obviously correct.

2            But a point, and there's a second point.  The third

3    party complaint, or the complaint against Mr. Strojnik does not

4    arise out of the same operative nucleus of facts as the

5    complaint.                                                    14:38:38

6            THE COURT:  Well, this, as I said, is actually an

7    additional counter defendant.  And you can assert, under the

8    rules, any counterclaim against a plaintiff.  Doesn't have to

9    be the same transaction.

10            MR. STROJNIK, SR.:  It is.                            14:38:53

11            THE COURT:  The issue of bringing Peter K. Strojnik in

12    really has to do with his alleged direct essential involvement

13    in that same conduct and whether he's an appropriate additional

14    defendant, counter defendant, which appears to me quite clear

15    that it would be.  So I think that's the answer to the         14:39:14

16    procedural issue that any counterclaim can be asserted against

17    a plaintiff, although this does appear to be, at least some

18    aspects of the alleged defamation, appears to directly relate

19    to the same subject matter.

20            Anyway, go ahead, Mr. Strojnik.                       14:39:30

21            MR. STROJNIK, SR.:  I defer to that opinion.

22            Your Honor, as I indicated earlier, I would be happy

23    to make an agreement to take down whatever offensive website

24    there might be and do it expeditiously.

25            THE COURT:  It's not just that, it's a cessation of    14:39:46

1    the leafleting and all that.

2            MR. STROJNIK, SR.:  Of course.  Of course.

3            In turn, we would like Mr. Popo to take down the entry

4    on thedirty.com where he signs his name as, "Amy Patterson is a

5    whore," and says the following:  "This girl, Amy Patterson, is                    14:40:03

6    such a whore.  Everyone knows she fucks anything and

7    everything" --

8            MR. PANTILIAT:  Your Honor, could I be heard on that?

9            THE COURT:  No, you can't, until he's done.

10           MR. STROJNIK, SR.:  "She sends nude photos to                             14:40:16

11   everyone.  I will have to dig some out, Amy.  I still have

12   them.  I heard you filed this BS.  Nice try looking for a

13   payday."

14           THE COURT:  What is this thing this is posted on?

15           MR. STROJNIK, SR.:  This is thedirty.com.  This is                       14:40:29

16   where you file, apparently, and I am not fully familiar with

17   the concept, but the concept is that if you want to say

18   something really bad about somebody and not be found that's

19   where you go.

20           THE COURT:  Is it some local venue?                                      14:40:44

21           MR. STROJNIK, SR.:  I think it's Scottsdale and Tempe.

22   I think it is local.  And it goes on and it says, "GTFO here

23   everyone is laughing at your fake shit."

24           Now, I didn't know what GTFO meant until today, and I

25   would be happy to explain it, but the ladies would have to                       14:41:02

```
 1   cover their ears if I did so.
 2          So I will take down, or I will cease whatever the
 3   allegations are against us until the Court has the opportunity
 4   to rule on this.  Before we do that, I mean, at the same time,
 5   I would like Mr. Popo to go to dirty.com and take off all his      14:41:20
 6   stuff.  And I would also like the Court to give me the
 7   opportunity to present you with a memorandum on this matter and
 8   I can do that by Monday.  And then I would like a hearing.
 9          THE COURT:  Mr. Pantiliat, have you looked at the
10   restraining issue?  I mean, you have a paragraph in your          14:41:44
11   supplemental briefing about no constitutional problem.
12          MR. PANTILIAT:  Yes, we have, Your Honor.
13          MR. MULLIS:  Your Honor, it's the Gentile case and it
14   talks about the constitutional standard is substantial
15   likelihood of material prejudice.  And it's the impact upon a     14:41:56
16   lawyer under Rule 3.6 of the professional conduct.  And that is
17   a restraint upon the lawyer.  And there is a different standard
18   between a lawyer and an individual.  What we're dealing with
19   here is a lawyer's conduct.
20          THE COURT:  If it were not a lawyer, would there be a       14:42:11
21   prior restraint issue?
22          MR. MULLIS:  There would be -- it's a lesser bar, but
23   with a picture of calling Mr. Popo a sexual predator that would
24   not fall within the same scope because that is defamatory
25   conduct and it is different.                                       14:42:28
```

1          THE COURT:  Well, I'm -- of course, Mr. Strojnik, any

2     time the Court is dealing with an emergency restraining order

3     the Court has to make the best judgment it can.  And it's

4     always subject to revision with further information.  But my

5     initial sense is there's no difficulty in entering a          14:42:51

6     restraining order against this conduct.  It's flagrantly

7     defamatory.  It's business defamation.  It is grossly, grossly

8     unprofessional conduct of a lawyer to do this.  And, of course,

9     this Court doesn't concern itself with those processes but I

10    wouldn't be surprised if they get into play eventually.        14:43:11

11         So I am going to ask you all -- I'm going to take a

12    short recess and ask you all to pursue this discussion I have

13    just invited.  I don't think it will take long at all.

14         I will enter a restraining order today against this

15    conduct if you can't work this out.                            14:43:39

16         So what time is my next -- is it 3:30?

17         THE COURTROOM DEPUTY:  3:30.

18         THE COURT:  I'm going to give you until 3:00 to

19    discuss this.

20         MR. STROJNIK, SR.:  Okay.                                 14:43:49

21         MR. PANTILIAT:  Your Honor, if I could just be heard.

22         THE COURT:  You know, I said I will enter a

23    restraining order, but I don't have the order you want to enter

24    so I won't enter anything until I get your order and I have a

25    chance to look at it and am satisfied it meets the requirements 14:43:59

1    of a restraining order which, by the way, are technical and

2    real under Rule 65.  I see a lot of restraining orders that are

3    not proper.  They are overbroad and not specific.  So if you

4    give me something like that, we'll just wait until Monday so

5    you can give me something that's right.                    14:44:15

6         MR. PANTILIAT:  We'll try to get you an order by the

7    end of the day today, Your Honor, if not sooner.

8         THE COURT:  I'm expecting that won't be necessary

9    because I'm expecting the next 15 minutes you will reach a

10   resolution, a temporary over the weekend so we can deal with  14:44:26

11   this next week.

12        MR. PANTILIAT:  Your Honor, if I could just be heard,

13   one of the conditions Mr. Strojnik made on him relinquishing or

14   taking down the website and so forth, is that we remove a post

15   from thedirty.com he had put into the record.  We did not make  14:44:41

16   that post.

17        THE COURT:  I do want to speak about that.

18        Mr. Strojnik, I understand why you said that because

19   that's how lawyers operate.  But I want to be clear:  I am not

20   dealing with anything you want from them because you haven't    14:44:54

21   sued them yet.  I'm only dealing with the restraining order in

22   front of me, and I want to have this resolved in a reasonable,

23   appropriate way so that it will stop until we can get back to

24   court promptly or I will enter an order.

25        Now, I want you all to resolve this.  And if you         14:45:08

```
 1    can't, then it's my job to enter something.
 2            MR. STROJNIK, SR.:  I think that's a great resolution,
 3    Your Honor.
 4            THE COURT:  We'll be in recess until 3:00.
 5            (Recess from 2:45 p.m. until 2:57 p.m.)                    14:45:20
 6            THE COURT:  Counsel, have you been able to reach a
 7    short-term resolution for us?
 8            MR. STROJNIK, SR.:  We have, Your Honor.
 9            THE COURT:  What would you like to put on the record?
10            MR. PANTILIAT:  Your Honor, I don't believe we have.    14:57:11
11            THE COURT:  Well, all right.  Then do you need to talk
12    some more, or is it over?
13            MR. PANTILIAT:  No, Your Honor, because one of the
14    issues that we're having is they are agreeing to take down
15    everything and cease their actions, but they are not agreeing    14:57:25
16    to have their client abide by the same terms claiming that they
17    have no power to bind her to any such agreement.
18            THE COURT:  You most assuredly do have the power to
19    bind your client.
20            Where is she?                                            14:57:40
21            MR. STROJNIK, SR.:  The question, Your Honor, really
22    is moot.  The client has no control over this matter.  I have
23    agreed with counsel to take down the website.
24            THE COURT:  Come speak into the microphone because I
25    can't hear you.                                                  14:57:52
```

1        MR. STROJNIK, SR.:  The question really is moot,

2   because I have agreed with counsel to take down the website.  I

3   have agreed with counsel to take down the Facebook.  I have

4   agreed with counsel to cease and desist all the flyers.

5        THE COURT:  And has Peter K. Strojnik been the one who    14:58:11

6   did -- is he solely responsible for these things?

7        MR. STROJNIK, SR.:  Actually, Facebook, add and

8   subtract -- the client is adding and subtracting from Facebook

9   and she is actually the one involved with the flyers at the

10  current time.                                                  14:58:27

11       I don't know if this case that counsel, Jason -- and I

12  apologize, I forgot his last name -- I think the case name is

13  *Gentile*.  Apparently, there's a difference between lawyers and

14  clients.  I don't know what that is.  But so far as the interim

15  period is concerned, I think I would feel comfortable agreeing   14:58:46

16  to call my client to tell her to cease and desist as well and

17  bind her in court today.  And then once I have had the

18  opportunity to review the entire case, I think the entire

19  matter may simply go away, because I may agree with this

20  process.                                                       14:59:05

21       THE COURT:  Mr. Pantiliat, sounds like you are pretty

22  close.

23       MR. PANTILIAT:  This could be a play, Your Honor, to

24  circumvent the whole issue and have the website up and running,

25  have the Facebook posts back, have the flyers back and just     14:59:21

1  allege it's his client doing all these actions.

2       THE COURT:  I may not have an injunction by the end of

3  the day anyway, because you did not submit a form of injunction

4  to me in time for me to prepare for it and may not before I

5  leave today.  So this may not be enjoined over the weekend          14:59:38

6  anyway.

7       But, you know, clients -- lawyers can usually control

8  clients, because the clients have reasons for having their

9  lawyer.

10      MR. STROJNIK, SR.:  Absolutely, Your Honor.  I feel           14:59:54

11  confident that I can do this, and I'm confident that the client

12  would abide by my consenting in court today.  In other words,

13  we are giving everything that counsel wants.

14      THE COURT:  All right.  Frankly, I think that's good

15  enough.  And if, in fact, this does continue over the weekend,     15:00:13

16  I will see you on Monday.  And also, Mr. Strojnik, if you want

17  to file a legal brief by 8:00 on Monday morning on prior

18  restraining, of course I will read it.  I think I'm generally

19  familiar with that.  But so at this point there is no order.

20  We have an agreement that it is in the interest of everyone to     15:00:47

21  honor, because if it does not get honored this matter looks

22  like it could have enormous consequences for both sides and

23  counsel.

24      MR. STROJNIK, SR.:  And as I said, Your Honor, I have

25  been involved in this case in the last 24 hours.  It could very    15:01:06

```
 1   well be by Monday the entire case, the entire matter would be

 2   resolved.

 3            THE COURT:  All right.  Mr. Pantiliat is there

 4   anything more you would like to say?

 5            MR. PANTILIAT:  Would you like us to still submit an      15:01:18

 6   order, Your Honor?

 7            THE COURT:  The answer is yes, not because I'm going

 8   to enter it.  I want to have it in case things blow up and I

 9   have to enter an order on Monday if this interim agreement

10   falls apart.  But right now I'm expecting that it will not,      15:01:31

11   that all this will cease immediately and you all can get back

12   to the substance of your respective clients' underlying claims.

13            MR. STROJNIK, SR.:  Yes, Your Honor.  Thank you, Your

14   Honor.

15            THE COURT:  All right.                                   15:01:47

16            MR. PANTILIAT:  Thank you, Your Honor.

17            THE COURT:  Anything else, Mr. Pantiliat?

18            MR. PANTILIAT:  No, Your Honor.  Thank you.

19            THE COURT:  Very well then.  Thank you.  We'll be

20   adjourned.                                                       15:01:53

21            MR. STROJNIK, SR.:  Your Honor, I'm sorry.  The

22   website is run by a website person.  We will tell him

23   immediately to take it down.

24            THE COURT:  Just have a good record of your immediate,

25   prompt, good faith efforts and directions.                      15:02:10
```

1      MR. STROJNIK, SR.:  I will get an e-mail out today.  I

2  will send you a copy Monday.

3      MR. PANTILIAT:  Your Honor, one last thing.  Is there

4  a hearing that's going to be set?

5      THE COURT:  Actually, yes.  That was the whole point.    15:02:20

6      I could -- depending on the time urgency now, if the

7  time were really urgent, I could see you all on, I think,

8  Tuesday at 3:00 or Wednesday morning.  I will set this for

9  Wednesday morning at 9:00.  However, if things unravel and this

10  harm continues, all I need is immediate notice and I will    15:02:53

11  accelerate this like any emergency temporary retraining order,

12  maybe even until late Monday.

13      MR. PANTILIAT:  Thank you.

14      MR. STROJNIK, SR.:  Your Honor, we agree to not do

15  anything until the Court rules.  I have a huge mediation    15:03:08

16  Wednesday, I mean, enormous.  Will you still request a hearing

17  on that day?

18      THE COURT:  I will set it on Tuesday at 3:00 then.

19      Wait.  Wait.  I am expecting that even if you all do

20  not settle the entire case you will resolve this part of it and    15:03:30

21  I will not have to have a hearing.  That's what I'm expecting.

22  If that does not happen, I will have the hearing on Tuesday at

23  3:00 as the fallback.

24      Oh.  That's right.  I have got a dentist appointment.

25  I should be back by 4:00 then.  So we can set it at 4:00.    15:03:50

1          MR. STROJNIK, SR.:  In the meantime, if we simply

2     agree to continue this indefinitely then we're good to go.

3          THE COURT:  Submit something in writing.

4          It is ordered setting hearing on the application for

5     temporary restraining order for this Tuesday, I think that's          15:04:06

6     the 7th of April, at 4:00.  Now, I'm expecting -- I am hoping

7     it will go away.  If it doesn't, we will deal with it then.

8     We'll be adjourned until 3:30.

9          (Proceeding concluded at 3:04 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6                        C E R T I F I C A T E

7

8          I, LAURIE A. ADAMS, do hereby certify that I am duly

9    appointed and qualified to act as Official Court Reporter for

10   the United States District Court for the District of Arizona.

11         I FURTHER CERTIFY that the foregoing pages constitute

12   a full, true, and accurate transcript of all of that portion of

13   the proceedings contained herein, had in the above-entitled

14   cause on the date specified therein, and that said transcript

15   was prepared under my direction and control.

16         DATED at Phoenix, Arizona, this 19th day of May, 2015.

17

18                            s/Laurie A. Adams

19                            _____
                              Laurie A. Adams, RMR, CRR

20

21

22

23

24

25