```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF ARIZONA
 2                          _____

 3
     Amy Patterson,              )
 4                               )
                  Plaintiff,     )
 5                               )    CV 15-0494-PHX-NVW
             vs.                 )
 6                               )    Phoenix, Arizona
     Two Fingers LLC, et al.,    )    May 20, 2015
 7                               )    2:13 p.m.
                  Defendants.    )
 8   _____)

 9
             BEFORE:  THE HONORABLE NEIL V. WAKE, JUDGE
10
               REPORTER'S TRANSCRIPT OF PROCEEDINGS
11
                      (Motion Hearing)
12

13   APPEARANCES:
     For the Plaintiff:
14           STROJNIK FIRM LLC
             By:  Peter Strojnik, Sr., Esq.
15           By:  Peter Strojnik, Jr., Esq.
             2415 E. Camelback Road, Suite 700
16           Phoenix, Arizona 85016

17   For the Defendants:
             HYMSON GOLDSTEIN & PANTILIAT PLLC
18           By:  Eddie A. Pantiliat, Esq.
             By:  Jason R. Mullis, Esq.
19           16427 N. Scottsdale Road, Suite 300
             Scottsdale, Arizona 85254
20

21   Official Court Reporter:

     David C. German, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Suite 312
     401 West Washington Street, SPC-39
23   Phoenix, Arizona 85003-2151
     (602) 322-7251
24
     PROCEEDINGS TAKEN BY STENOGRAPHIC COURT REPORTER
25   TRANSCRIPT PREPARED BY COMPUTER-AIDED TRANSCRIPTION
```

```
 1                      P R O C E E D I N G S
 2          THE COURT:  Please be seated.
 3          THE COURTROOM DEPUTY CLERK:  This is Civil Case
 4  2015-494, Amy Patterson versus Two Fingers, LLC, et al.  This
 5  is the time set for a motion hearing.
 6          Counsel, please announce your presence for the
 7  record.
 8          MR. STROJNIK, SR.:  Your Honor, my name is Peter
 9  Strojnik, Bar Number 6464.  I represent the plaintiff Amy
10  Patterson and counterdefendant Amy Patterson and Peter K.
11  Strojnik, who are present in the courtroom.
12          MR. PANTILIAT:  Good afternoon, Your Honor.  I'm Ed
13  Pantiliat.  I represent defendants and counterclaimants Two
14  Fingers, Four Fingers and Six Fingers, as well as the Popo
15  defendants and counterclaimants.
16          MR. MULLIS:  Good afternoon, Your Honor.  Jason
17  Mullis representing defendants as well.
18          MR. PANTILIAT:  Mr. Popo is present.
19          THE COURT:  Mr. Popo.
20          And Mr. Popo is -- is he the sole owner of these
21  restaurants in question?
22          MR. PANTILIAT:  No.  He is a co-owner, Your Honor.
23          THE COURT:  All right.
24          All right.  Good afternoon to all.
25          I set this to discuss this Document Number 30 Motion
```

02:13:26

02:13:37

02:13:54

02:14:01

02:14:16

1  for Order Prohibiting Defendants From Intimidating Witnesses

2  and Threatening Counsel.

3          All right.  I'll hear from you all but first I have

4  some preliminaries.

5          Counsel, the things that are addressed here are          02:14:51

6  unprecedented in my experience in any lawsuit by any lawyer.

7  Some of the things.  Of course, I do not know whether they are

8  true, I only know what is alleged.

9          Secondly, this Court is going to process this case in

10 a way that decides the case on the merits in a fair and          02:15:08

11 accurate way, expeditiously, and that does not allow the

12 litigation itself to be used to abuse other people in the

13 process.  Any party or attorney who behaves in a way that

14 incurs liability or responsibility for professional misconduct

15 will have to answer to that if called to task for it, whether   02:15:36

16 it be by additional pleadings, claims asserted in this lawsuit

17 or some other lawsuit, or additional proceedings before the

18 State Bar.  My responsibility is to process this case and I

19 will do that and I will do everything in my power to prevent

20 this litigation process from being abused to cause collateral   02:15:56

21 harm to anyone.

22          Now, I do have a preliminary question for -- I --

23 because we have two Mr. Strojniks here, is it acceptable if I

24 refer to you as Mr. Strojnik, Sr. and Mr. Strojnik, Jr.?

25          MR. STROJNIK, SR.:  That would be great, Your Honor.    02:16:18

4

```
 1              THE COURT:  All right.

 2              All right.  Mr. Strojnik, Sr., have you addressed --

 3     and I don't want to -- I'm not asking you the substance of any

 4     communication you've had with your client.  I'm just asking a

 5     yes-or-no question.  Have you thought through the conflict of      02:16:30

 6     interest you have in this case in representing both Miss

 7     Patterson and Mr. Strojnik, Jr. in the same matter?  Have you

 8     thought that through?

 9              MR. STROJNIK, SR.:  I have initially -- you want a

10     yes or no?                                                         02:16:47

11              THE COURT:  Well, actually, you can answer that

12     however you want, just be clear that I'm not asking you to

13     disclose the substance of any communications you've had with

14     any client.

15              MR. STROJNIK, SR.:  May I approach the podium?            02:16:57

16              THE COURT:  You may.

17              MR. STROJNIK, SR.:  Thank you.

18              Thank you, Your Honor.

19              Obviously, a conflict is always an issue that needs

20     to be addressed by an attorney.  I have addressed these issues    02:17:10

21     in my mind.  It is important for me to point out that Peter

22     Strojnik or Strojnik PC and the Strojnik Law Firm are

23     completely separated and separate and individual law firms.  I

24     can tell you that I have no information that would make my

25     representation here subject me to potential 3.7 rule.             02:17:28
```

1          I can also tell the Court that in my opinion, which,

2    of course, is subject to greater minds, that in my opinion

3    there is no conflict between my representation of

4    Miss Patterson and my representation of Mr. Strojnik.

5    Further, should there be such a conflict, it is my belief that    02:17:50

6    a conflict would be waived if asked for.

7          But in response to your question whether I have had

8    specific discussions, the answer is I have not up to this

9    point.

10          THE COURT:  So the short answer is you have not, as    02:18:06

11    of this point in time, advised your client of conflicts and

12    obtained consent or waiver yet.

13          MR. STROJNIK, SR.:  I have discussed with my client

14    my position in this case.  I have discussed with my client the

15    matters that have been raised.  Have I actually sat down with    02:18:21

16    her and said this is a potential conflict or this is a

17    possible conflict?  Not to this point, Your Honor.  That, of

18    course, does not mean that will not occur in the very near

19    future.

20          THE COURT:  Let me address with you what seems rather    02:18:36

21    obvious to me, and, of course, the Court's concern is that

22    this case be processed in a way that is without unnecessary

23    delay and obstruction.  It does appear -- and again, I go by

24    the papers I've read.  I don't have any knowledge of

25    underlying facts other than what I'm reading as being alleged.    02:18:53

1  The conflict appears rather apparent because Mr. Strojnik, Jr.

2  is alleged to have advised and led his client into a course of

3  defamation of the defendants, including participation by

4  himself as a principal, and that defamation could render both

5  her and him liable.                                    02:19:20

6        Now, having been the person who both advised it and

7  participated as a principal, he could be just as liable as her

8  for any of that, and if liability is established

9  Miss Patterson, it seems -- again, I'm not making any final

10  pronouncement about anything.  I'm just commenting what       02:19:42

11  appears on the surface of things.  But it does appear that

12  Miss Patterson would have a claim over against

13  Mr. Strojnik, Jr. for all of the liability that is adjudicated

14  against her for having followed what appears to be his advice

15  and participating in this course of defamation.  If that's the  02:20:02

16  case, the conflict would appear to be quite severe.

17        And as I'm sure you know, waivable conflicts are

18  limited.  Sometimes they can be waived and sometimes they

19  cannot.  When a conflict is too severe, it can only be waived

20  if there's full disclosure to the client, which is clear that  02:20:20

21  it's not yet happened with Miss Patterson, and if the lawyer

22  believes honestly that the conflict will not impair his

23  ability to represent both clients and it's not, you know, too

24  serious.

25        So it does appear this would be an unwaivable       02:20:39

1  conflict with this course of action.

2       Now, I don't -- I don't say this for the purpose of

3  putting you on the spot or even expecting an answer.  I say

4  this because I'm charged with processing this case.  There's a

5  problem here.  I want it to be addressed so that we can                02:20:57

6  proceed with counsel who is ethically permitted to proceed and

7  not delay this case.

8       And I guess finally, even if you do obtain a consent

9  from Miss Patterson to represent both her and your son, with a

10  consent to be effective there has to be full disclosure and        02:21:22

11  full understanding, and you and your son will be at risk that

12  at the back end, if things go badly for her, you, as lawyer

13  for her, will be open to a lawsuit for not having obtained

14  adequate consent.

15       Now, this situation, at least on the surface of it        02:21:46

16  with the limited awareness I have from just reading your

17  papers, appears to be of utmost gravity of both conflict in

18  interest both for ethical responsibility and civil liability

19  to you and your son.

20       So again, I don't know that -- well, the Court        02:22:09

21  doesn't have authority -- well, let's put it this way:  I

22  don't -- I'm not quite sure of exactly the boundaries but in

23  general the Court doesn't disqualify counsel because they have

24  a conflict between their own clients.  It's certainly not

25  something that's available to the opposing party to raise just        02:22:28

1  because the clients, your two clients, would have a claim.  An

2  opposing party can raise that if and when it seriously

3  threatens to cause harm to them.  It's not enough just that

4  you will have ethical liability and civil liability to one or

5  both of your clients for continuing.  My general sense is the          02:22:49

6  Court has probably the same limitation.

7          So I am -- I point this out.  I just want to make

8  clear that you understand, at least, the initial concern I

9  have.

10          MR. STROJNIK, SR.:  Your Honor, first of all, I want       02:23:05

11  to thank the Court for the frank discussion about this matter.

12  This is obviously a matter that needs to be addressed

13  immediately.

14          As you will recall, I became involved in this case

15  when a character conflict developed between previous counsel       02:23:17

16  and current counsel for the parties.  I came in as more of a

17  peacemaker than anything else, and the Court will recall that

18  my first appearance in this court resulted in voluntary

19  agreements to abide by the requests of the defense counsel.

20          I would also like to point out to the Court what I       02:23:41

21  consider to be rather good news in this case, and that is that

22  there has been a level of cooperation in this case since my

23  appearance, that there have been agreements reached with

24  respect to a number of -- at least two issues.  The issue of

25  whom should not be contacted directly.  The issue of whether       02:24:00

1   or not the original verified complaint or counterclaim filed

2   by counsel adequately states a claim.  These issues have been

3   addressed both by e-mails, they have been addressed by

4   personal consultation.

5           So it was my hope that my presence in this case would      02:24:18

6   essentially parrot Your Honor's concerns.

7           THE COURT:  Well, my comment in no way suggests

8   anything about whether you are or would do a good job.  I'm

9   just talking about the conflict of interest that could get you

10  all sued and Bar disciplined.                                      02:24:38

11          MR. STROJNIK, SR.:  Right.  No.  I think that's a

12  point that needs to be addressed and shall be addressed

13  forthwith.

14          THE COURT:  All right.  Now --

15          MR. STROJNIK, SR.:  In light of that, Your Honor, let      02:24:47

16  me ask the Court whether or not this matter today should

17  continue or whether I should be allowed a week to --

18          THE COURT:  I'm proceeding today.  This matter is

19  proceeding.  You have to make your judgments about what you do

20  and what you are willing to answer for in terms of potentially    02:25:06

21  being sued, not just your son but you, too, and answer with

22  the Bar.  I have a matter of urgency here and I will address

23  it.

24          Now, with respect to this motion seeking permission

25  to reopen this web page -- and I remind you all that when we      02:25:29

1  were in court the last time you all reached an agreement and

2  there is no injunction.  I entered no injunction.  Therefore,

3  there's no need to lift an injunction.

4       The question that I think you're presenting to me,

5  Mr. Strojnik, is you want me to give you some clearance in          02:25:54

6  advance as to what you can say and how about Mr. Popo and his

7  company.  There is no injunction in place.  At this point,

8  technically, the defendants have not sought an injunction.

9       So I -- the first thing I want to be clear with all

10 of you, I am not going to give an advance determination or          02:26:18

11 permission to do any of this publicity you seek.  That is not

12 my responsibility, and indeed, it is the responsibility of

13 parties and counsel to obtain competent, accurate legal advice

14 and to take courses of action, and if lawyers give bad advice

15 and if clients act on advice that turns out to be bad advice,       02:26:53

16 there may well be consequences.  There may be consequences in

17 terms of the processing the lawsuit.  There may be

18 consequences in terms of civil liability and additional

19 lawsuits.  There may even be consequences in terms of

20 professional responsibility in having to answer to the State        02:27:13

21 Bar for that.

22       But I am not disposed to give you absolution in

23 advance to do any of this.  It is -- as I said, it is the

24 responsibility of clients and lawyers to evaluate the law, to

25 ascertain it accurately, and to conform their conduct to what       02:27:34

1  the law allows without the adverse consequences that I've

2  listed.

3          So I put this in the question I put out to you as to

4  whether I should just enter an injunction stopping all this

5  publicity, at least beyond the direct investigation of          02:27:55

6  witnesses and matters involving the allegations in this suit.

7  And that would mean putting an end to your public

8  advertisement for anything bad of a similar character the

9  defendants have ever done requiring you to inform the other

10  side before something and then the Court could resolve          02:28:16

11  disputes.

12          I have done that successfully with some other kinds

13  of discovery disputes, but as I think about it, the problem

14  with that is that you would still be asking me to determine in

15  advance what you can do and not do.          02:28:40

16          I put this on the table and we will discuss this

17  fully.  I'll hear from both of you as to what your thoughts

18  are.

19          But my thought now is that, Mr. Strojnik, you and

20  your client have to decide what you can and may do and what          02:29:02

21  you're willing to answer for, and you -- if you are -- if you

22  consider this well and you take courses of action that do not

23  subject you to serious risks of liability, there will be no

24  disputes that arise.  If you are wrong, if you take

25  inappropriate risks, then you do things, and then the other          02:29:30

1  side can decide whether they want to take action.  I'm

2  assuming that will be a prompt renewal of the motion for

3  temporary restraining order.

4       But if it comes to that, I will then have actual

5  facts to address.  I would be looking at what you have done                02:29:47

6  rather than abstractions about what you say you would like to

7  do.  What you've done is what you and your client are willing

8  to answer for legally in court both as to new claims against

9  you and as to consequences for processing this case, and if

10 there are violations there could be a variety of consequences,              02:30:12

11 including exclusion of evidence that might otherwise be

12 permissible.

13      Right now I'm thinking that has the disadvantage of

14 causing harm to the other side if you do things that cross

15 over the line but I have a feeling you're going to get sued if              02:30:30

16 you do something they think crosses over, not just you but

17 your son, also, Mr. Strojnik.

18      MR. STROJNIK, SR.:  If it crosses the line, of

19 course, Your Honor.  It has never been the intent of new

20 counsel, nor has -- nor shall it ever be to cross the line on               02:30:45

21 any matter.

22      THE COURT:  You know, I'll tell you, what you put

23 here in this brief as what you want authorized is

24 breath-taking.  I'm not authorizing that or anything.  You're

25 going to have to decide what you're actually willing to do.                 02:30:58

1  So that's what I put on the table on that issue.

2         Before I invite your comments, and then I'll want to

3  also hear from Mr. Pantiliat on this point, I'm not quite sure

4  from your brief or your motion, Mr. Strojnik, but it does

5  appear to me that you're contemplating setting up this web                02:31:29

6  page and doing other publications as well that you're

7  participating, too, and I'll tell you if you do things that

8  appropriately result in you getting sued, too, then you

9  clearly will have disqualified yourself for that additional

10  reason.                                                                   02:31:55

11        Now, again, I've just -- I'm not expressing any final

12  judgment about this but I look at this web page where you

13  reference, republish the pleadings that you've filed in this

14  case.  I guess I assume you think that your client and your

15  son have no liability for the defamatory content of that                 02:32:23

16  because they're court pleadings.  I won't put you on the spot

17  but I just assume you think that.

18        That's not correct.  The privilege of republishing

19  court pleadings that have defamatory content in and of

20  themselves does not apply to your client or your son or you.             02:32:43

21        And if you want to check that out, just check the

22  Second Restatement of Torts, Comment 611 -- Section 611,

23  Comment (c)(2) that talks about this and says that the

24  privilege of republication does not apply to the person who

25  originally filed the court pleadings with defamatory content             02:33:13

1    and did so with privilege, but the republication by that

2    person is not privileged, and nor was republication done by

3    someone else with the cooperation, collusion of that person.

4          So I look at these pleadings that you have linked to

5    and it's -- I urge you to look at this law because it does          02:33:36

6    appear that your son has rendered himself and his client

7    liable in defamation for the defamatory content of those

8    pleadings, and if you participate in that you'll be personally

9    liable as well.

10         Now -- so if -- that really goes to what it is that          02:33:58

11   you may choose to continue to do.

12         So I'm going to invite the comments from both counsel

13   about what I've laid out as a different proposal from what I

14   put in my question.

15         MR. STROJNIK, SR.:  Your Honor --                             02:34:12

16         THE COURT:  And that proposal is I do nothing, I'll

17   wait and see what you do.  The defendants can then seek an

18   injunction, maybe amend their counterclaim, add more

19   counterclaims, and that will create an occasion for me to

20   agrees what it is you can and cannot do, what you are supposed      02:34:26

21   to be able to figure out on your own and comport your conduct

22   and your clients' conduct with it.

23         Go ahead, Mr. Strojnik.

24         MR. STROJNIK, SR.:  Your Honor, let me just state

25   that I am good of hearing and understanding and I fully            02:34:39

1  understand the Court's view on the matter.  I believe that the

2  Court's view is guided by the desire to decide this case on

3  the merits.  That is my desire as well.  Because in our

4  complaint horrible things are alleged, bad things are alleged,

5  and we want those things to get in front of the jury.          02:35:03

6          We don't particularly care at this point about

7  websites.  We don't particularly care -- I don't even -- I

8  don't myself do -- what is it? -- Facebook and all that

9  newfangled stuff that people get involved in.

10          THE COURT:  Neither do I.                              02:35:18

11          MR. STROJNIK, SR.:  Well, there we go.

12          So the Court should not be surprised if I state right

13  at this very moment that the motion of which you speak is

14  hereby withdrawn, and that solves the issue, I believe.

15          I think that -- I think that the guidance is          02:35:33

16  appropriate.  I think that focusing this case on the merits of

17  the case is appropriate.  I believe that a clear discussion of

18  who represents whom in this case is appropriate.  And I

19  believe that ultimately, ultimately, when the initial fatigue

20  of litigation subsides and emotions go away somewhat that a    02:35:55

21  positive relationship going toward resolution of the primary

22  claims will be established.

23          It has been my experience that sometimes it takes

24  nine months, and I call the nine-month period the fatigue

25  period.  After nine months people just get tired.  It is my    02:36:14

```
 1  hope --
 2          THE COURT:  I'll tell you -- I'm sorry to interrupt
 3  you because I don't want you to lose your train of thought.  I
 4  have most of my cases done within nine months.  Over.  I move
 5  them fast.  I get them decided on the merits.  I don't let      02:36:26
 6  people get fatigued by the burden and expense of litigation to
 7  the extent it's possible to prevent it.
 8          MR. STROJNIK, SR.:  Neither do I.
 9          And, Your Honor, if I can just share socially, my
10  practice is to invite counsel to my house or for a breakfast   02:36:41
11  and we smoke cigars, drink beer and talk.  And the reason for
12  that is not so much to decide the case, because cases don't
13  get decided in backyards smoking cigars and drinking beer,
14  they get decided in the courtroom, the purpose of that is so
15  that the opposing counsel knows who I am, so I know who he is,  02:36:59
16  so that when we talk we go by the first name and we talk like
17  people who know one another.  That has been -- I had a
18  two-hour meeting with a lawyer just about ten days ago in the
19  backyard.
20          So this is our intent.  Our intent is to streamline     02:37:15
21  the case.  That's my intent.
22          And that's all I want to share with the Court, but I
23  do thank the Court for its view on the matters raised, and if
24  the Court will accept my motion to withdraw the motion of
25  which we speak --                                               02:37:33
```

1          THE COURT:  Let me hear from Mr. Pantiliat about

2     that.

3          MR. STROJNIK, SR.:  There is one more issue that I

4     wanted to raise.  You haven't raised it in your initial

5     remarks but I can raise it perhaps later.          02:37:42

6          THE COURT:  Let me -- I -- I like to take things one

7     issue at a time.  I have some more things to talk about.  The

8     communications with employees is a separate issue.  I want to

9     talk about that.

10         MR. STROJNIK, SR.:  Correct.          02:37:52

11         THE COURT:  And this issue -- your request for an

12    injunction against them filing Bar complaints is a third

13    issue.  But let's talk about this issue first.

14         MR. STROJNIK, SR.:  Thank you.

15         THE COURT:  Mr. Pantiliat, I don't know what you need   02:38:03

16    to say but you're free to say what you think.

17         MR. PANTILIAT:  I'm not quite sure where we stand,

18    Your Honor.  If Mr. Strojnik is withdrawing his motion with

19    regard to a request for the reopening of the website, we would

20    consent to that withdrawal, we have no objection to that, as   02:38:16

21    long as there's not another motion that's going to come down

22    the pike another week or month from now asking to reopen it.

23    Otherwise, we'll go forward with the injunction that we

24    originally requested.

25         THE COURT:  Well, if we need to go forward it will be   02:38:30

1    based on what they're doing at the time.  It will be focused

2    on those facts and not on, you know, abstract concerns.

3            MR. PANTILIAT:  Correct, Your Honor.

4            THE COURT:  All right.  Then let me -- let me

5    address, then, this issue of interviewing witnesses.                    02:38:43

6            Oh.  By the way, I did have a further comment on this

7    issue about the general publicity.

8            It does appear to me, Mr. Strojnik, that your

9    legitimate interest in finding witnesses to Miss Patterson's

10   lawsuit is adequately taken care of by your pursuit of          02:39:05

11   witnesses for which you or she has some reason to think that

12   they have knowledge relating to the incidents that she

13   alleges.

14           Your desire to generally publish about the terrible

15   things Mr. Popo does on the theory that you also want to have    02:39:19

16   in your trial every other sexual harassment he's ever done is

17   highly dubious under Rule 403 of the Rules of Evidence, which

18   allows the Court to limit evidence to what has probative

19   value, is not distracting, not a waste of time, and I can tell

20   you it is very unlikely that you would ever be allowed to try    02:39:40

21   multiple cases in your trial.

22           We also have the obvious severe collateral harm being

23   done to the defendants and their business by this general,

24   public, worldwide defamation, defamation that may be true, I

25   do not prejudge that, but it's clearly harmful.  It is clear    02:40:03

1    here that it is an intended purpose and an obvious purpose to

2    cause that harm.  And so I appreciate that you've withdrawn

3    your motion, but the Court would deal with that if I have to.

4            Now, with respect to interviewing employees, I have a

5    somewhat similar thought on that, Mr. Strojnik, and that is            02:40:31

6    what you have posed up is matters of extreme generality.  It

7    is -- you're asking me to give you -- to tell you how you may

8    investigate this case and to give you absolution in advance,

9    which I'm -- I don't think it's practical to do that but it's

10   somewhat the same situation in that we have the principals            02:40:59

11   here and if you have potential witnesses that you want to

12   contact, you need to investigate the law with a mind to the

13   consequence of being wrong, which is likely to exclude

14   witnesses and perhaps other things as well if you have

15   improper contact with them without their attorney present, and        02:41:23

16   again you can decide what you're going to do.

17           Now, prudent lawyers, if it's not clear, will contact

18   the other lawyer and tell him and find out if there's a

19   dispute.  If you do that, you get a little caution from that

20   from bringing disputes to the Court on specific matters with          02:41:43

21   specific witnesses whose circumstances can be examined, but if

22   you don't, again, that will be up to Mr. Pantiliat, if he

23   thinks you have crossed over the line, to seek whatever relief

24   he thinks your conduct has warranted.  The most obvious thing

25   is exclusion of evidence, but there might other remedies as           02:42:04

1  well.

2       The alternative would be for me to undertake these

3  wide-ranging abstract instructions.  Your client pays you for

4  legal advice to prepare a case, and that's your job, not mine,

5  so...                                                    02:42:21

6       MR. STROJNIK, SR.:  Your Honor, moments ago when you

7  referred to a prudent lawyer I felt a feeling of warmth

8  succumb over my body, and that is because this is exactly what

9  I had done.  I contacted counsel -- or counsel contacted me

10 and says we object to your contacting our witnesses.  And I   02:42:34

11 said, well, can you please tell me who these witnesses are and

12 we won't contact them.  And I received an e-mail back -- and

13 this, by the way, is how I want to conduct this case -- and it

14 came back that they don't want us to contact Lucas Schott and

15 Michael Stidham.  This was by e-mail dated April 27, 2015.     02:42:53

16      And we obviously -- even though we don't agree that

17 these witnesses fall within Lang, I think that it's

18 appropriate to give counsel deference on these matters and if

19 he doesn't want us to contact them --

20      THE COURT:  It's real easy.  If they're worthwhile      02:43:13

21 witnesses, you notice their deposition, you take their

22 deposition.

23      MR. STROJNIK, SR.:  Exactly.  And as the Court knows,

24 whenever somebody tells you don't talk to this person they are

25 the first to be deposed.                                       02:43:24

1          Your Honor, was there --

2          THE COURT:  Well, I guess -- again, Mr. Pantiliat, is

3    there anything you want to say on that issue?

4          MR. PANTILIAT:  Yeah, I do want to be heard a little

5    bit on that, Your Honor.                                        02:43:37

6          There are the witnesses since -- thank you.

7          When we sent that e-mail we were only aware at the

8    present time of those two witnesses.  Since sending that

9    e-mail, we have now been aware that they've contacted other

10   witnesses.  So obviously that e-mail would blanket those       02:43:53

11   witnesses as well.

12         THE COURT:  Are these current or former employees?

13         MR. PANTILIAT:  They're two current managerial

14   employees, Your Honor.

15         THE COURT:  But I thought you just said there were       02:44:07

16   some others as well.

17         MR. PANTILIAT:  Oh.  And there is a former employee

18   as well, Your Honor, who is not managerial.

19         THE COURT:  A witness who would have been a witness

20   to conduct in issue here as opposed to just the business in    02:44:22

21   general?

22         MR. PANTILIAT:  I believe so, Your Honor.

23         And they've also alleged that he has information that

24   forms their basis that we've committed tax fraud, we've hired

25   undocumented workers --                                        02:44:42

```
 1            THE COURT:  I've stricken that, haven't I?
 2            MR. PANTILIAT:  Okay.
 3            But this witness may have other information related
 4   to the harassment claim as well.  We have not yet spoken to
 5   this former employee.                                          02:44:51
 6            THE COURT:  Do you have plans to do that or --
 7            MR. PANTILIAT:  Yes, we do, Your Honor.
 8            THE COURT:  Is that former employee cooperating with
 9   you?
10            MR. PANTILIAT:  Yes, he is.  As a matter of fact,     02:44:56
11   Your Honor, he actually leases a condominium from one of the
12   owners of the restaurants.
13            THE COURT:  I'm sure you'll want to talk to that
14   person --
15            MR. PANTILIAT:  Most definitely.                      02:45:06
16            THE COURT:  -- and find out if there's anything that
17   matters here.
18            MR. PANTILIAT:  Yes.
19            THE COURT:  All right.
20            So again, I'm not going to give advance approvals.    02:45:11
21   If, in fact, Mr. Strojnik, you have that discussion about
22   interviewing a witness and -- you know, as a practical matter,
23   Mr. Pantiliat, you know who these people are.  Of course, if
24   they're internal people you can talk to them.  If they're
25   external people they may talk to you.  You can find out        02:45:34
```

```
 1   whether they do or do not wish to speak with Mr. Strojnik
 2   outside of court proceedings, or at least outside your
 3   presence, and if the answer is no there's nothing for me to
 4   resolve.
 5           So those are the practicalities that need to be      02:45:49
 6   worked through before any court motion would be appropriate.
 7           I -- well, I'm -- Mr. Strojnik, I'm just sure that
 8   Miss Patterson is going to have a good idea what people would
 9   have been privy to what incidents she bases this lawsuit upon.
10   So I -- you don't have to respond to that, but --             02:46:18
11           MR. STROJNIK, SR.:  I'm just suggesting this is the
12   right way to go.  I think counsel for the defendants
13   understands the people he doesn't want me to talk to and I
14   won't talk to them.
15           THE COURT:  All right.                                02:46:28
16           The third item is this motion to restrain,
17   threatening Mr. Strojnik about Bar complaints.  It is clear to
18   me from reading this there has been no threat.  It is
19   perfectly appropriate and sometimes it's ethically required of
20   lawyers to file a Bar complaint, you file it.  There's been no 02:46:43
21   indication here of a threat to do it.  And I understand from
22   the briefs there are Bar complaints pending, and there may be
23   more Bar complaints filed, but, you know, there's nothing for
24   me to restrain because there's nothing before me to suggest
25   that there has been a threat.  And there's nothing wrong with  02:47:01
```

```
1   him later on disclosing to you that he did file those Bar

2   complaints.

3           So again, I don't think there's really anything for

4   me to do there.

5           Do you want to be heard on that, Mr. Strojnik?          02:47:16

6           MR. STROJNIK, SR.:  I just wanted to mention that

7   this was a motion filed by former counsel who is no longer

8   counsel.  In my reply regarding that motion I thought I was

9   clear in pointing out that that is no longer an issue in the

10  case, because nobody has threatened me that I --              02:47:30

11          THE COURT:  I mean even Mr. Strojnik, Jr.  There's no

12  threat to him, either.

13          MR. STROJNIK, SR.:  They can threaten me all they

14  want and we'll come to court if it's inappropriate.

15          THE COURT:  Anything on that, Mr. Pantiliat?          02:47:44

16          MR. PANTILIAT:  No, Your Honor.  I think you sufficed

17  it correctly.

18          THE COURT:  All right.

19          Before we adjourn -- I think that's everything on

20  this but is there anything more that I haven't covered that I   02:47:54

21  should on this motion?  Mr. Strojnik?

22          MR. STROJNIK, SR.:  Your Honor, there is.  The

23  primary motion here has been expressed in our concern that

24  there has been an attempt to intimidate some of the witnesses

25  in the case.                                                  02:48:11
```

1          THE COURT:  I don't see any evidence of that.  They

2    can talk to their people.  They can talk to their former

3    employees.  Tell me what this is.

4          MR. STROJNIK, SR.:  Well, Your Honor, there were

5    e-mails exchanged -- I mean text messages exchanged between    02:48:21

6    Amy Patterson and a fellow named --

7          THE COURT:  I've read all that.  Yeah.

8          MR. STROJNIK, SR.:  That is not -- that is not the

9    crux of the motion.  The crux of the motion comes actually in

10   the reply.  Because a person who feels threatened is not       02:48:37

11   necessarily threatened; just feeling something is not enough,

12   but when that person then discusses the matter with someone

13   who has power and control over that person, such as the

14   employer or the counsel for the employer, and that witness

15   then completely changes his testimony, there is cause for      02:49:01

16   concern, in my opinion.

17         And the cause for concern is that the initial

18   conversation was not between people who were in disparate

19   positions, one having control or power over the other.  It was

20   communication between two friends and it was communication     02:49:23

21   that was free of any threat or fear or intimidation or

22   potential retribution.

23         But when such communication is denied in a later

24   affidavit which follows a discussion between the witness and

25   the witness's employer or the agent for the witness's employer 02:49:45

1  and the witness entirely disputes and denies the statements

2  previously made, I believe that because of the particularity

3  of the power of the employer over the employee, I think it

4  becomes an issue.

5            As the Court is aware, the employer has the right to        02:50:06

6  fire the employee for whatever reason, good or bad, and --

7            THE COURT:  He also has a right to talk to his

8  employees.

9            MR. STROJNIK, SR.:  I'm sorry?

10           THE COURT:  He also has the right to talk to his        02:50:15

11  employees.

12           MR. STROJNIK, SR.:  Absolutely.  He has the right to

13  talk to the employees.  But the question becomes -- and I am

14  vaguely familiar with the case law that says when a witness

15  changes her testimony there has to be some explanation as to        02:50:26

16  why.

17           THE COURT:  You're talking about testimony given in

18  deposition or otherwise under oath.  We're not talking about

19  that here.

20           MR. STROJNIK, SR.:  I'm not talking about that.  I        02:50:36

21  know what the Court is referring to.  I know that series of

22  cases.

23           My concern, Your Honor, is that this has been an

24  extraordinarily emotional case and I believe that all parties

25  had allowed their emotions to get the better of them, and        02:50:52

perhaps some of them have made errors of judgment, not

necessarily because of some evil intent or evil mind but

because emotions have a tendency for people to do that.

My concern is that, not particularly in the case of

Mr. Campillo, because the jury is going to hear from him, they    02:51:11

will know all about what happened, I'll depose him and that's

going to be resolved through trial, but my concern is that

there might be others whose opinions might be colored by the

power and the control of the defendant employers.  And I would

like to have that avoided at all cost because I will not    02:51:36

always be able to find out whether this had occurred.

That's all I have on that.

THE COURT:  So what do you seek in that respect, what

relief?

MR. STROJNIK, SR.:  What I seek, Your Honor, is    02:51:52

simply a reminder to all, as the Court had done earlier this

afternoon, that intimidation, suggestion, threat, or anything

like that addressed to a potential witness is inappropriate

and will not be tolerated and that upon a proper motion action

will be taken if the motion turns out to be correct.    02:52:17

THE COURT:  All right.  Mr. Pancreatitis, your

response?

MR. PANTILIAT:  Thank you, Your Honor.

We have not engaged in any intimidation of any

witnesses.  There were text messages that were sent sometime    02:52:31

1  prior to the litigation.  We were only made aware of them

2  after they'd been disclosed during the pleading stages of this

3  litigation.  We thereafter contacted the individuals

4  referenced in those text messages, who are current employees

5  and managers of the restaurant.  We discussed the text                02:52:48

6  messages with them.  We prepared declarations on their behalf,

7  which they signed willingly and voluntarily, and we submitted

8  that to the Court.  We don't believe this request or motion

9  has any basis whatsoever.

10         Thank you, Your Honor.                                        02:53:03

11         THE COURT:  All right.

12         Well, I'm going to issue a very short written order

13  that will not elaborate on what I've already said here.  I

14  don't see any -- first of all, there's no basis for any Court

15  direction.  There's no basis to think there's any misconduct   02:53:21

16  by the defendants with respect to witnesses.  I've read all

17  this material.  This all looks normal.  I don't think there's

18  a basis for me to tell you what you all already know about the

19  ethical rules.  This is a point of distinction with the other

20  things that I have talked with you about in which there is      02:53:40

21  grievous basis to be concerned about what has already happened

22  in this case.

23         So with that, that motion is taken under advisement.

24  We'll be adjourned.

25         (Proceedings recessed at 2:53 p.m.)                       02:53:52

1

2

3                        C E R T I F I C A T E

4

5

6        I, DAVID C. GERMAN, Official Court Reporter, do hereby

7    certify that I am duly appointed and qualified to act as

8    Official Court Reporter for the United States District Court

9    for the District of Arizona.

10       I FURTHER CERTIFY that the proceedings and testimony

11   reported by me on the date specified herein regarding the

12   afore-captioned matter are contained fully and accurately in

13   the notes taken by me upon said matter; that the same were

14   transcribed by me with the aid of a computer; and that the

15   foregoing is a true and correct transcript of the same, all

16   done to the best of my skill and ability.

17

18

19       DATED at Phoenix, Arizona, this 17th day of June, 2015.

20

21

22                         s/David C. German
                           DAVID C. GERMAN, RMR, CRR
23

24

25