Peter Strojnik, 6464
STROJNIK, P.C.
2415 East Camelback Rd., Suite 700
Phoenix, Arizona 85016
Telephone: 602-524-6602
Facsimile: 602-296-0135
e-mail: *ps@strojnik.com*
Counsel for Amy Patterson

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| AMY PATTERSON, | NO. 2:15-cv-00494-NVW |
| Plaintiff, | |
| vs. | **VERIFIED MOTION TO ENFORCE SETTLEMENT AGREEMENT** |
| TWO FINGERS, LLC, et al | |
| Defendants. | **AND** |
| _____ | **FOR ATTORNEY'S FEES** |
| TWO FINGERS, LLC, et al | |
| Counter-claimants, | |
| vs. | |
| AMY PATTERSON, et al | |
| Counter-defendants. | |
| _____ | |

## SUMMARY OF MOTION

This case settled on **June 5, 2015**. Exhibit 1. On the same day, counsel for Plaintiff, with consent of counsel for Defendants, filed the Notice of Settlement. *Id.* Doc. 63. Upon receipt of the Notice, the Court scheduled a dismissal of this case for July 6, 2015. Doc. 64.

Defendants did not diligently pursue their obligation to prepare the settlement agreement or to issue the settlement checks. It took until **June 16, 2015** for Mr. Mullis

to prepare the draft agreement. It was not until **June 17, 2015** that Mr. Mullis "initiated the process for obtaining the checks". Exhibit 2.

The final draft of the Settlement Agreement was agreed to and signed by Ms. Plaintiff and her counsel on **June 22, 2015**. Exhibit 3[1].

Defendants refused to sign it or pay on it.

Therefore, on **July 1, 2015**, undersigned advised defense counsel that he would file a Motion to Enforce Settlement Agreement on July 3, 2015 unless the settlement agreement was countersigned and the settlement amount paid. Miraculously, undersigned counsel received *all* signatures within 24 hours. *Id.* Thankfully, the Settlement Agreement is now fully executed by all parties and counsel. *Id.*

However, there is still no payment. As more fully addressed below, Mr. Mullis (apparently) agreed to the settlement without his client's consent.

In order to allow Mr. Mullis to fix his client problems, Plaintiff's counsel consented to and filed the Stipulation to Extend Time to Complete Settlement. Doc 68. As of this writing, the Court has not ruled on the Stipulation. Plaintiff fears that this case may be dismissed on July 6, 2015 (tomorrow) unless the Court retains jurisdiction to enforce the payment term of the Settlement Agreement.

Mr. Mullis has since provided the undersigned with pdf copies of 2 checks dated **July 2, 2015**. The checks (1) are made payable to his own firm and not to "Strojnik P.C. Client Trust Account" as agreed, and (2) they are $15,000 short of the settlement amount. Exhibit 4[2].

Plaintiff is experiencing an irritating sense that all is not as it appears. She is justifiably concerned that Defendants will continue with their delaying strategy until the Court dismissed Plaintiff's claim and force Plaintiff to file a separate contract action for breach of the Settlement Agreement. This is simply not acceptable. Therefore, Plaintiff

---

[1] Signature pages only.

[2] The amounts are redacted to maintain confidentiality.

2

respectfully requests that this Court retain jurisdiction over this matter until Defendants have complied with the payment provision of the Settlement Agreement[3].

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. Facts Giving Rise to Motion

Plaintiff and Defendants settled their claims and counterclaims on **June 5, 2015**. Exhibit 1[4]. Counsel for Plaintiff wrote:

> This confirms that the Patterson claims and counterclaims ▮ ▮ have been settled for ▮, each party to pay their own costs and attorney's fees. Jason will prepare the paperwork.

Counsel for Defendants confirmed:

> Correct.

For ten days thereafter, counsel for Defendants failed to draft the settlement agreement. Having waited long enough, on **June 15, 2015**, Counsel for Patterson offered to prepare the settlement agreement and do it within 24 hours. Exhibit 5.

Counsel's offer was rejected and, on **June 16, 2015**, Mr. Mullis finally submitted a draft Settlement Agreement. Counsel for Patterson redlined and e-mailed the draft back to Defendants on the same day, **June 16, 2015**. On **June 17, 2015**, counsel for Defendants approved the Stipulation for Dismissal with Prejudice. Exhibit 6. In the same e-mail string, Mr. Mullis advised that he "ha[s] already initiated the process for obtaining the checks".

On **June 17, 2015**, counsel for Plaintiff redlined the Settlement Agreement and forwarded the changes to counsel for Defendants.

Out of the blue, on **June 22, 2015**, Mr. Mullis advised that he did not have the insurer's authority to settle; the conversation was documented in an e-mail of even date, Exhibit 7:

---

[3] Plaintiff does not by this Motion waive *any* breach of the Settlement Agreement or the covenant of good faith and fair dealing.

[4] Exhibits and references to confidential terms of the agreement are blacklined to comply with the confidentiality covenant.

3

> Thank you, Jason, for the update. You explained that the insurer has authorized payment of ▮▮▮▮ and that the restaurant ownership has agreed to pay the difference of ▮▮▮▮ in order to make up the ▮▮▮▮ settlement payment. However, the ownership is now balking at making the payment, so you are faced with two problems: First, the Farmers' adjuster in charge of the case is in trial and unavailable to discuss increasing the authority to pay ▮▮▮▮ and the ownership refuses to make payment.
>
> This is a significant problem in light of the July 6, 2015 deadline imposed by Judge Wake. Obviously, Ms. Patterson cannot accept ▮▮▮▮ in light of the settlement agreement at ▮▮▮▮. I have not dealt with this kind of an issue previously and I cannot think of a way to resolve it on my end. I must leave it up to you to come up with a timely solution.

Mr. Pantiliat, however, flatly refuted Mr. Mullis' statement that the ownership agreed to make *any* part of the payment and demanded that the insurer comply with the settlement terms:

> Peter, please be advised that the Owners never agreed to make a contribution towards the settlement so they are not "balking" at all, their carrier needs to comply with the settlement terms. That is where we stand.

Exhibit 8[5]. Later in the day, Mr. Mullis apparently solved the settlement authority issues with his insurers and forwarded a response to Plaintiff's redlines. The redlines were accepted and the formal Settlement Agreement was finalized.

Two terms of the final version of the Settlement Agreement are most relevant: The *timing* term and the *execution in counterparts* term. The timing term provides:

> 1. <u>Consideration</u>. ▮▮▮▮ Stone and Vine and/or its insurers will pay Patterson ▮▮▮▮ ("Settlement Payment") within the *earliest possible time* following the execution of this Agreement which shall be obtained by the Parties at their *earliest opportunity*. The Settlement Payment is in full and complete satisfaction of the Claims and Counterclaims between the Parties.

---

[5] This is the second time Mr. Mullis misrepresented the amount and the source of payment to Plaintiff's counsel. The first time occurred when counsel met with Mr. Mullis at Paradise Bakery at the Biltmore earlier in the case.

4

> *The Settlement Payment will be made payable to the "Strojnik, P.C. Client Trust Account*," taxpayer identification number ███ ███████. *The Parties agree that time is of the essence.*
> (Emphasis supplied)

18. <u>Counterparts/ Effective Date</u>.  This Agreement may be separately executed in separate counterparts and then exchanged by email/PDF, facsimile or delivery to the other Party(ies)' legal counsel.  The sets of exchanged counterparts shall each have the same force and effect as a fully-signed original counterpart and shall constitute an effective, binding agreement on the part of each of the Parties once the exchanged signed counterparts have each been so received by the respective legal counsel for the Parties.

The purpose of the timing and counterparts terms is to avoid delay and close the deal ASAP. The "earliest opportunity" to obtain pdf signatures is immediate: E-mail the agreement to clients, sign and return. Since there was more than one party whose signatures were required, the Counterparts clause allowed for the Agreement to be "separately executed in separate counterparts and then exchanged by e-mail".

The "earliest possible time following the execution of the agreement" is likewise immediate: Issue an e-mail to the check writing office requesting payment.  "Time is of the essence" clause is self-explanatory.

However, when demand was made for compliance with the terms of the Agreement, Mr. Mullis, contrary to the express language of ¶1 of the Settlement Agreement, e-mailed the following to counsel:

> …The agreement required us to provide payment within the "earliest possible time following the execution of this Agreement," which was understood to be between 30 and 60 days …We are working as fast as we can to obtain the funds.

Exhibit 9[6].

It is true that Mr. Mullis *initially* demanded a 60 day payment period; however, that provision was *specifically negotiated out* of the final version of the Settlement

---

[6] Perhaps Mr. Mullis forgot that he "initiated the process for obtaining the checks" as early as June 17, 2015. Exhibit 6.

5

Agreement in favor of the "earliest opportunity" and "earliest possible time" verbiage. Notably, Mr. Mullis' "understanding" is belied by the full integration clause:

> 15. <u>Entire Agreement</u>.  This Agreement's terms (including any referenced pre-existing agreements' terms but only to the extent they are not inconsistent with any of them) represents the entire agreement and understanding between the Parties concerning the subject matter of this Agreement ▮▮▮▮▮, and otherwise supersedes and replaces any and all prior other agreements concerning the subject matter of this Agreement ▮▮▮▮▮.

Ultimately, on **July 2, 2015**, Mr. Mullis produced pdf copies of two checks. Exhibit 4. The aggregate of the checks was $15,000.00 short of the settlement amount. Additionally, the checks were written to the order of Mr. Mullis' lawyer trust account and not to the "Strojnik P.C. Client Trust Account" as specifically agreed.

For the insurance company to write settlement checks to its own attorney is highly unusual and contrary to the well-entrenched settlement customs. Issuing checks $15,000 short of the settlement amount makes little sense other than to delay, harass and force Plaintiff to jump through needless adversarial hoops. Plaintiff can offer no benevolent explanation for these odd breaches. Customarily, the parties execute a formal settlement agreement within 24-48 hours of the agreement to settle, and the insurer pays Plaintiff and counsel directly[7]. Where the Settlement Agreement calls for payment "within the earliest possible time" and the payment provision is specifically made subject to a "time is of the essence clause", the checks can be in Plaintiff's hands within another 48 hours.

Here, Defendants have delayed the process by exactly one month, perhaps waiting for the Court to dismiss Plaintiff's claims pursuant to the Order, doc 64. Plaintiff disagrees with this strategy.

---

[7] Upon information and belief, Farmers maintains 4 check writing facilities in the Phoenix area.

**2. Legal Traditions Regarding Settlements.**

It is well accepted that a lawyer has the authority, apparent or otherwise, to settle a case on behalf of a client. If the client disputes that, his beef is with the lawyer, not his adversary. Our system of justice would not work if a lawyer's word was not his and his client's bond. *Miller v. Mohave Cnty.* CV 11-08182-PCT-FJM (D. Ariz., 2013*)*

On June 5, 2015, there was offer, acceptance and consideration. The important terms are clear and specific: Defendants would pay a sum of money and the case would be dismissed with each party paying its own costs and attorney's fees. Mr. Mullis agreed to prepare the paperwork. Indeed the parties filed a Notice of Settlement (doc. 63), as required by LRCiv 40.2(d). Once this document was filed the underlying claim was extinguished by the accord and no longer existed. *Id.* A lawyer cannot file a Notice of Settlement unless there is a settlement. *Id.* The court relies on the Notice. It is a misrepresentation to the tribunal to file a Notice of Settlement where there is no settlement. *Id.*

**CONCLUSION AND PRAYER FOR RELIEF**

There is no affable explanation for the delays occasioned by Defendants. There is no reason for Defendants' obstinate refusal to abide by the Settlement Agreement. Mr. Mullis' statement that the execution of the agreement was "understood to be between 30 and 60 days" is patently false. The delay is a flagrant breach of the payment term. Therefore, Plaintiff requests an award of attorney's fees both pursuant to the terms of the Agreement and A.R.S. § 12-341.01.

Plaintiff further requests that the Court retain jurisdiction until this matter is resolved.

RESPECTFULLY SUBMITTED this 5th day of July, 2015.

**STROJNIK P.C.**

Peter Strojnik (6464)
Special Counsel for Amy Patterson

7

**VERIFICATION**

I verify under the penalty of perjury that the above is true and correct to the best of my knowledge, information and belief.

DATED this 5th day of July, 2015.

_____