Eddie A. Pantiliat (State Bar No. 015231)
**HYMSON GOLDSTEIN & PANTILIAT, PLLC**
16427 N. Scottsdale Road, Suite 300
Scottsdale, Arizona 85254
Telephone: 480- 991-9077
minute@legalcounselors.com

Jason R. Mullis (State Bar No. 024289)
jmullis@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
2525 E. Camelback Road, Suite 450
Phoenix, Arizona 85016-4210
Phone: 602-441-1300 ♦ Fax 602-441-1350

*Attorneys for Two Fingers, LLC dba Stone and Vine Urban
Italian Restaurant, Four Fingers, LLC dba Salt & Lime Modern
Mexican Grill, Six Fingers, LLC dba Black & Bleu Restaurant,
and Joseph M. Popo and Gabriella Popo*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| AMY PATTERSON,<br><br>                    Plaintiff,<br><br>        v.<br><br>TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO,<br><br>                    Defendants. | Case No. 2:15-cv-00494-NVW<br><br>**DEFENDANTS TWO FINGERS, LLC, FOUR FINGERS, LLC, SIX FINGERS, LLC, AND JOSEPH M. POPO AND GABRIELLA POPO'S RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR ATTORNEYS' FEES AND SANCTIONS**<br><br>The Hon. Neil V. Wake |
| TWO FINGERS, LLC, an Arizona corporation dba Stone and Vine Urban Italian Restaurant; FOUR FINGERS, LLC, an Arizona corporation dba Salt & Lime Modern Mexican Grill; SIX FINGERS, LLC, an Arizona corporation dba Black & Bleu Restaurant; JOSEPH M. POPO and GABRIELLA POPO,<br><br>                    Counterclaimants. | |

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350

1        v.

2 AMY PATTERSON,

3           Counterdefendant.

TWO FINGERS, LLC, an Arizona
4 corporation dba Stone and Vine Urban
Italian Restaurant; FOUR FINGERS, LLC,
5 an Arizona corporation dba Salt & Lime
Modern Mexican Grill; SIX FINGERS,
6 LLC, an Arizona corporation dba Black &
Bleu Restaurant; JOSEPH M. POPO and
7 GABRIELLA POPO,

8          Third-Party Plaintiff,

9 PETER K. STROJNIK and THE
STROJNIK FIRM L.L.C.,
10

11          Third-Party Defendants.

12       Defendants Two Fingers, LLC dba Stone and Vine Urban Italian Restaurant, Four

13 Fingers, LLC dba Salt & Lime Modern Mexican Grill, Six Fingers, LLC dba Black & Bleu

14 Restaurant and Joseph M. Popo and Gabriella Popo (collectively "Defendants") hereby

15 Respond to Plaintiff's Motion to Enforce Settlement Agreement and For Attorneys' Fees and

16 Sanctions (the "Motion"). To be certain, Defendants have made every effort to provide

17 payment within the estimated time period quoted during the negotiation process, which is

18 evidenced by payment being made <u>faster</u> than originally estimated. Defendants' counsel make

19 clear on multiple occasion that payment typically occurs between thirty (30) and sixty (60)

20 days after receipt of an executed settlement agreement.

21       Such timing was estimated due to the insurer requiring a fully executed settlement

22 agreement prior to processing checks and necessitating that all payments be processed through

23 defense counsel's trust account prior to issuance[1]. Such impediments to "immediate" payment

24 were communicated to opposing counsel and an agreement was reached requiring Defense

25 counsel to use provide payment "within the earliest possible time following the execution of

26

27      [1] Processing through defense counsel's trust account obviates the cumbersome task of
establishing separate vendor accounts for each Plaintiff firm upon the conclusion of each
28 claim.

this agreement," instead of the sixty (60) days included in the draft settlement agreement. At the time this language was agreed to, Plaintiff's counsel was apprised that thirty (30) days would be the earliest possible time frame, not that payment would be made pursuant to Plaintiff counsel's arbitrarily imposed deadlines established following the settlement being reached.

The correspondence between the parties makes clear that Plaintiff's counsel was aware of the estimated payment schedule, that Plaintiff's counsel was continually apprised of the progress, and that Plaintiff's counsel imposed deadlines with full knowledge Defendants could not comply. Coupled with Plaintiff's counsel's refusal to withdraw the Motion upon payment being tendered[2], it is clear that Plaintiff's counsel's objections are a calculated effort to obtain additional money and/or fees upon failing to recover as much as desired and/or sought from the underlying claim. The personal attacks, blatant mischaracterization of facts and timing of the Motion, belies the improper motives and strategic use of same.

For these reasons, Defendants respectfully request that the Motion be denied and that Defendants be awarded their attorneys' fees incurred responding to the Motion(s).

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **DEFENDANTS DILIGENTLY ENDEAVORED TO REACH AN AGREEMENT AS TO THE FORM OF THE SETTLEMENT AGREEMENT.**

On Friday, June 5, 2015, a settlement was reached between Plaintiff Patterson and Defendants to resolve their claims against one-another. See *Correspondence from Plaintiff's counsel confirming settlement*, attached hereto as Exhibit "B." On the following Monday, June 8, 2015, a draft form of agreement was prepared by Wood, Smith Henning & Berman ("Wood Smith") and delivered to personal counsel for Defendants, Eddie Pantiliat and Juliet Peters. *See Correspondence*, attached hereto as Exhibit "C." On June 10, 2015, Plaintiff's counsel was advised that a draft agreement had been drafted and was being discussed among

---

[2] See Acknowledgement of Receipt of Settlement Funds, attached hereto as Exhibit 'A."

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350

1    counsel. *See Correspondence to Strojnik*, attached hereto as Exhibit "D." On June 12, 2015,

2    counsel for Defendants had finalized their agreement as to the form of the settlement

3    agreement to be provided opposing counsel. *See Correspondence dated June 12, 2015*,

4    attached hereto as Exhibit "E."    On Tuesday, June 16, 2015, personal counsel for

5    Defendants, upon obtaining approval from Defendants, provided the draft settlement

6    agreement to Plaintiff. *See Correspondence transmitting settlement agreement*, attached

7    hereto as Exhibit "F."

8        Thus, Plaintiff was provided a draft agreement agreed to by all Defendants and their

9    counsel within seven (7) business days of a settlement being reached. Such a short period of

10   time is facially reasonable given the number of entities involved, the number of counsel

11   providing input, and the unique circumstances existing in this case rendering a "form"

12   agreement inappropriate.

13   **II.    DEFENDANTS    DILIGENTLY    SOUGHT    TO    RESOLVE    DISPUTES**

14   **REGARDING THE TIMING OF PAYMENT.**

15       On June 16, 2015, Plaintiff's counsel responded by providing proposed redline

16   changes, inclusive of a requirement for Defendants to provide settlement payments by June

17   24, 2015 (only eight days after the agreement was circulated). *See Correspondence from*

18   *Plaintiff*, attached hereto as Exhibit "G." Within five (5) minutes of receiving Plaintiff's

19   proposed revisions, Wood Smith advised that Plaintiff's counsel's expectations regarding the

20   timing of payment was wrong, informing Plaintiff's counsel that the carrier's protocols

21   required an executed agreement to be received prior to processing a check and that the funds

22   would have to clear through Wood Smith's trust account prior to dispersal to Plaintiff. *See*

23   *Email Exchange dated June 16, 2015*, attached hereto as Exhibit "H." Wood Smith made

24   clear, "**Thirty days is a minimum from receipt of a signed agreement**." See Exhibit "H."

25       Plaintiff's counsel retorted, requesting that Defendants just execute the agreement,

26   despite a significant dispute as to the timing of payment and the practical impossibility of

27   providing within the truncated time period demanded. *See* Exhibit "H." The next day, Wood

28   Smith reiterated that the goal was to "get this wrapped up as soon as possible," but that a firm

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ● FAX 602-441-1350

deadline that could not be guaranteed to be met would be unacceptable. *See Correspondence from Wood Smith*, attached hereto as Exhibit "I." The final agreed to language omitted any reference to a specific time period (as Defense counsel had requested) for payment. Defendants agreed to provide payment "within the earliest possible time period following the execution of the Agreement," which was expressly represented by Defendants on multiple occasions to be at least thirty (30) days. *See Transmittal of Final Settlement Agreement*, attached hereto as Exhibit 'J." The Agreement was provided to Plaintiff on June 22, 2015.

## III. MISUNDERSTANDINGS AS TO THE ALLOCATION OF REMAINING SETTLEMENT AUTHORITY ONLY MARGINALLY IMPACTED RESOLUTION OF THE SETTLEMENT.

Unfortunately, while negotiations were ongoing regarding revisions to the proposed agreement (June 16 to June 22, 2015), it became apparent that there was a misunderstanding as to the allocation of the agreed to settlement amount among Defendants, the Commercial General Liability Insurer ("CGL"), and the Employment Practices Liability ("EPL") Insurer. The EPL carrier was only obligated to defend and contribute toward resolution of the employment discrimination claims, whereas the CGL insurer was obligated to defend and indemnify against the defamation claims, only. The EPL policy provided $100,000 in coverage, however, defense fees and costs erode available limits[1]. At the time of settlement negotiations, an allocation of defense costs between the CGL (non-erosive) and EPL policies was conducted to ensure sufficient funding was available for a settlement offer. As a result of such estimates, it was determined that approximately $70,000 remained under the EPL policy (subject to change as additional fees and costs were incurred).

An initial offer was presented to Plaintiff in the amount of $100,000, which included $30,000 from the CGL carrier and remaining limits under the EPL policy, up to $70,000 (assuming $70,000 remained at the time of issuance). Thereafter, Plaintiffs rejected the settlement offer and demanded $175,000. *See Correspondence from Strojnik*, attached hereto

---

[1] For instance, if Defendants incur $30,000 in costs, there would only be $70,000 available for settlement.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 • FAX 602-441-1350

1    as Exhibit "K." Due to the full amount of the EPL coverage already being allocated toward

2    settlement, any additional resources for a settlement offer would have to come from the CGL

3    carrier and/or Defendants directly. Authority was ultimately provided by the CGL carrier to

4    provide an additional $15,000 in authority, subject to Defendants matching any amount

5    included in an increased settlement offer. *See Correspondence*, attached hereto as Exhibit

6    "L." Conceivably, such an approach resulted in potential authority up to $130,000. Due to

7    Plaintiff accepting $115,000, instead of the $130,000 available in potential authority, there

8    was a misunderstanding among defense counsel as to the re-allocation of the $15,000

9    overage.

10            Contrary to Plaintiff's aspersions and personal attacks upon counsel's credibility, the

11    misunderstanding had nothing to do with defense counsel failing to obtain and/or

12    communicate authority, but the result of a potentiality occurring that had not been discussed

13    by Defendants' counsel in formulating strategy (reallocation due to a settlement below

14    available authority). Resolution of this misunderstanding was concluded the following

15    Monday, June 22, 2015, the same day the a final agreement was provided to Plaintiff.

16    Notwithstanding the minor delay resulting from such misunderstandings, a response to

17    Plaintiff's counsel's proposed revisions were nevertheless provided within 3-4 business days

18    of receipt, negating any legitimate contention that Defendants were dilatory and/or

19    intentionally delaying the settlement process. At most, the misunderstanding resulted a 2-3

20    day delay in finalizing the settlement process. As discussed below, such delay was offset by

21    the settlement payment being provided <u>five (5) days earlier than estimated</u>.

22    **IV.    DEFENSE COUNSEL AND THE INSURERS PROMPTLY PROCESSED THE
23            SETTLEMENT PAYMENT WITHIN THE TIME PERIOD QUOTED AT THE
            OUTSET OF NEGOTIATIONS.**

24            On June 22, 2015 (at 6:20 p.m.), Wood Smith received a copy of the executed

25    settlement agreement from Plaintiff's counsel. *See Transmittal of Executed Agreement*,

26    attached hereto as Exhibit "M." The very next day, June 23, 2015, Wood Smith forwarded

27    the executed settlement agreement to the CGL and EPL insurers, along with a copy of Wood

28

Smith's W-9, to avoid any potential delays with payment.  See *Transmittal to Insurers*, attached hereto as Exhibit "N."  A week after receipt of the settlement agreement, Plaintiff's counsel began threatening the filing of a Motion to Enforce the Settlement Agreement unless settlement funds were in his hands by July 3rd.  *See Correspondence from Strojnik*, attached hereto as Exhibit "O."  Wood Smith reminded Plaintiff's counsel that the agreement was not to provide payment by July 3rd, but that payment would be the "earliest possible time following execution of the agreement, which was understood to be between 30 and 60 days." *See Correspondence from Wood Smith*, attached hereto as Exhibit "P."

On July 2, 2015, Wood Smith received confirmation from the EPL and CGL adjusters that the checks had been cut and were being sent to Wood Smith to be processed through the firm trust account.  *See Correspondence from Adjusters*, attached hereto as Exhibit "Q."  In an attempt to provide assurances regarding payment, Plaintiff's counsel was apprised via email of the checks from the EPL carrier totaling $100,000 (representing exhaustion of the EPL policy)[3], and the anticipated timing for payment of the settlement amount.  *See Correspondence from Wood Smith*, attached hereto as Exhibit "R."  Despite such assurances and notification of impracticality of immediate payment, Plaintiffs' counsel continued to demand that "payment be in his hands by the end of business on Friday." *See Correspondence from Strojnik*, attached hereto as Exhibit "S."

Per correspondence dated July 2, a mere ten days after receipt of the executed settlement agreement, Plaintiff's counsel had been provided proof that the checks from the insurers to Wood Smith's trust account were in the mail and provided a likely payment date of July 17, 2015, notably five days earlier that the thirty (30) day period estimated as a best case scenario.  *See Correspondence from Wood Smith*, attached hereto as Exhibit "T."  The estimated payment date was premised upon anticipated mailing delays due to the upcoming 4th of July holiday, time necessary for the checks to clear our trust account, and mailing days

---

[3] Counsel advised Plaintiff's counsel that the $100,000 was only the EPL portion and that the CGL checks had also been sent via mail as well.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350

associated with interoffice mail[4].  Despite such assurances and estimated delivery date, Plaintiff's counsel continued to persist that defense counsel breach its employer's corporate policy and/or prudent business practices by writing a check out of the trust account prior to the check clearing the financial institution upon which it was drawn.  *See Correspondence from Strojnik*, attached hereto as Exhibit "U."

The full correspondence between the parties, not simply the cherry-picked portion selected by Plaintiff's counsel, establishes without question that Wood Smith has taken every reasonable effort to expedite the settlement of this matter.  Wood Smith's obligation was to process the settlement in the "earliest possible time," which was estimated and known to the parties to be between 30 and 60 days.  Since Wood Smith has exceeded such expectations, any argument that Defendants have breached the Settlement Agreement is disingenuous at best.

## V.    CONTRACTS ARE TO BE INTERPRETED SO AS TO ASCERTAIN THE INTENT OF THE PARTIES IN ORDER TO ENFORCE THAT INTENT.

A general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written.  *Grosvenor Holdings, L.L.C., v. Figueroa*, 222 Ariz, 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App.2009).  In order to determine the parties' intent, courts consider "the plain meaning of the words in the context of the contract as a whole." *Id.*  Here, the parties understood that payment would be made "by Defendants and/or its insurers." *See Fully Executed Settlement Agreement, Covenant 1*, attached hereto as Exhibit "V."  The parties fully anticipated that insurers' policies and procedures would impact the timing of payment. Indeed, such policies and procedures were expressly provided to Plaintiff's counsel prior the settlement agreement being executed and it was understood timing would be between thirty

---

[4] All Wood Smith trust account deposits and withdrawals are processed through our firm headquarters in Los Angeles, California.  An interoffice mail processing system collects checks and mail each night to deliver to Los Angeles and vice versa.  For instance, a check received on a Tuesday will be mailed to Los Angeles Tuesday night and deposited Wednesday.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350

1  (30) and sixty (60) days.

2      Plaintiff argues the phrase "within the earliest possible time period following the

3  execution of the Agreement" should be interpreted as requiring payment within 48 hours.

4  See Motion, page 6. Arizona courts adopt a permissive approach to the parol evidence rule.

5  *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138

6  (1993). The Judge is to first consider the offered evidence, i.e. negotiations between the

7  parties as to the estimated time period for payment, and if the Court believes the language is

8  reasonably susceptible to the interpretation asserted by the proponent, the evidence is

9  admissible to determine the meaning intended by the parties. *Id.*    Thus, even when a

10  contract is clear on its face, which the phrase "within the earliest possible time" is most

11  certainly not, the court is still required to engage in a preliminary consideration of extrinsic

12  evidence to see whether it creates ambiguity.  The facts of this case are simple and

13  straightforward, Defendants originally requested a time period of thirty (30) to sixty (60)

14  days, to which Plaintiff initially requested that payment be issued within eight (8) days,

15  ultimately agreeing to thirty (30) days. *See Proposed Revisions from Plaintiff's counsel*,

16  attached hereto as Exhibit "W." Due to Defense Counsel's belief that payment may take

17  longer and the inability to commit to thirty (30) days, a compromise was reached whereby

18  payment was to be provided "within the earliest possible time," irrespective of whether such

19  time ends up being 14, 27, 35 or 60 days. See Exhibit "V."

20      Given the open ended nature of the language and best efforts undertaken by Defense

21  counsel as summarized herein, Defendants cannot be held to have breached the Settlement

22  Agreement in any manner.

23  **VI.  CONCLUSION**

24      As set forth herein, Wood Smith has provided payment precisely as described at the

25  very outset of negotiations. Plaintiff's counsel may disagree with the policies and procedures

26  and/or believe them to be unnecessary, but his personal opinion does not change the facts.

27  Insurance carriers are permitted to establish procedures for the issuance and tracking of

28  settlement payments. Similarly, law firms are permitted to centralize trust account access to

1  minimize the possibility of abuse and require that checks directed to their trust account clear
2  the financial institution before dispersing to opposing counsel. Inevitably, these protocols
3  and safety mechanisms may result in settlement checks being delivered to opposing counsel
4  longer than they would prefer, which is precisely why such procedures are disclosed at the
5  very outset of negotiations. Plaintiff's counsel cannot legitimately argue surprise as to the
6  timing of payment.

7         Finally, in conjunction with providing notice of the anticipated timing of payment,
8  Defendants' counsel sought the withdrawal of Plaintiff's Motion to avoid the unnecessary
9  time and expense associated with filing a Response. *See Correspondence from Strojnik,*
10 attached hereto as Exhibit "X." Despite payment being made within the thirty (30) day
11 originally estimated, Plaintiff's counsel flatly and unequivocally refused. See Exhibit "X."
12 Consequently, Defendants respectfully request an award of their attorneys' fees pursuant to
13 Covenant 14 of the Settlement Agreement, providing for an award of attorneys' fees to the
14 prevailing party. See Exhibit "V."

15

16 / / /

17

18

19 / / /

20

21

22 / / /

23

24

25 / / /

26

27

28 / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350

1   RESPECTFULLY SUBMITTED this 20ᵗʰ day of July, 2015.

2

3                          HYMSON GOLDSTEIN & PANTILIAT, PLLC

4

5                          By: _____ w/permission

6                          EDDIE A. PANTILIAT
                           *Attorneys for Defendants Two Fingers, LLC
7                          dba Stone and Vine Urban Italian Restaurant,
                           Four Fingers, LLC dba Salt & Lime Modern
8                          Mexican Grill, Six Fingers, LLC dba Black &
                           Bleu Restaurant, and Joseph M. Popo and
9                          Gabriella Popo*

10                         WOOD, SMITH, HENNING & BERMAN LLP

11

12                         By: _____

13                         JASON R. MULLIS
                           *Attorneys for Defendants Two Fingers, LLC
14                         dba Stone and Vine Urban Italian Restaurant,
                           Four Fingers, LLC dba Salt & Lime Modern
15                         Mexican Grill, Six Fingers, LLC dba Black &
                           Bleu Restaurant, and Joseph M. Popo and
16                         Gabriella Popo*

17                         CERTIFICATE OF SERVICE

18      I hereby certify that on the 20ᵗʰ day of July, 2015, the foregoing document entitled,

19   **DEFENDANTS TWO FINGERS, LLC, FOUR FINGERS, LLC, SIX FINGERS, LLC,**

20   **AND JOSEPH M. POPO AND GABRIELLA POPO'S RESPONSE TO PLAINTIFF'S**

21   **MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR ATTORNEYS'**

22   **FEES AND SANCTIONS** was e-filed and served via electronic service through the United

23   States District Court for the District of Arizona's ECF System and to the following ECF

24   registrants:

25

26   Peter K. Strojnik
     THE STROJNIK FIRM L.L.C.
27   Esplanade Center III
     2415 East Camelback Road, Suite 700
28   Phoenix, AZ 85016

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ◆ FAX 602-441-1350

Peter Strojnik
STROJNIK, P.C.
Esplanade Center III
2415 East Camelback Road, Suite 700
Phoenix, AZ 85016

Eddie A. Pantiliat
HYMSON GOLDSTEIN & PANTILIAT, PLLC
16427 N. Scottsdale Road, Suite 300
Scottsdale, Arizona  85254



Becki Villarreal

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
2525 E. CAMELBACK ROAD, SUITE 450
PHOENIX, ARIZONA 85016-4210
TELEPHONE 602-441-1300 ♦ FAX 602-441-1350